**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNSUCK DC METRO, | ) | |
| 2200 North Westmoreland Street | ) | |
| Arlington, VA 22213, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1242-TSC |
| | ) | |
| WASHINGTON METROPOLITAN AREA | ) | |
| TRANSIT AUTHORITY, | ) | |
| 600 Fifth Street, N.W. | ) | |
| Washington, DC 20001, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PAUL J. WIEDEFELD, in his official capacity | ) | |
| as General Manager of the Washington | ) | |
| Metropolitan Area Transit Authority, | ) | |
| 600 Fifth Street, N.W. | ) | |
| Washington, DC 20001, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1), 12(b)(6), 12(d) and 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Defendants Washington Metropolitan Area Transit Authority and Paul J. Wiedefeld, General Manager, hereby move to dismiss or, in the alternative, for summary judgment. In support of this motion, Defendants rely on the accompanying Memorandum of Points and Authorities, Statement of Material Facts, and Declaration of Lynn Bowersox. A proposed order is attached.

Dated: June 11, 2019     Respectfully submitted,

            /s/ Caroline L. Wolverton
            Anthony T. Pierce
              D.C. Bar. No. 415263
            Rex S. Heinke

admitted pro hac vice
Caroline L. Wolverton
   D.C. No. Bar 496433
AKIN GUMP STRAUSS HAUER & FELD, LLP
2001 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 887-4107
Fax: (202) 887-4288
cwolverton@akingump.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNSUCK DC METRO, | ) | |
| 2200 North Westmoreland Street | ) | |
| Arlington, VA 22213, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1242-TSC |
| | ) | |
| WASHINGTON METROPOLITAN AREA | ) | |
| TRANSIT AUTHORITY, | ) | |
| 600 Fifth Street, N.W. | ) | |
| Washington, DC 20001, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PAUL J. WIEDEFELD, in his official capacity | ) | |
| as General Manager of the Washington | ) | |
| Metropolitan Area Transit Authority, | ) | |
| 600 Fifth Street, N.W. | ) | |
| Washington, DC 20001, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT**

Anthony T. Pierce
 D.C. Bar. No. 415263
Rex S. Heinke
 admitted pro hac vice
Caroline L. Wolverton
 D.C. No. Bar 496433
AKIN GUMP STRAUSS HAUER & FELD, LLP
2001 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 887-4107
Fax: (202) 887-4288
cwolverton@akingump.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

WMATA AND THE PARP ...................................................................................1

FACTUAL BACKGROUND ..................................................................................2

SUMMARY OF ARGUMENT...............................................................................5

ARGUMENT .........................................................................................................6

I.    The Court Lacks Subject Matter Jurisdiction Over Unsuck's Claims Based On The PARP, Declaratory Judgment Act, Administrative Procedure Act, And Common Law....................................................................................6

    A.    Legal Standard for Rule 12(b)(1)...............................................6

    B.    WMATA's Eleventh Amendment Immunity Precludes Unsuck's Claims Based On The Declaratory Judgment Act, The Administrative Procedure Act, And Common Law. ...................7

    C.    Unsuck Lacks Standing To Assert Claims Based On The PARP, The Declaratory Judgment Act, And State Common Law. .........7

    D.    WMATA Is Not Subject To The Administrative Procedure Act. ................9

II.    Unsuck's Claims Under The Declaratory Judgment Act, First Amendment, Administrative Procedure Act, And Common Law Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted. ....................10

    A.    Rule 12(b)(6) Legal Standard. ..................................................10

    B.    Unsuck's Claim Under The Declaratory Judgment Act Fails....................10

    C.    Unsuck's First Amendment Claim Fails. ...................................11

    D.    The PARP's Remedy Precludes Unsuck's Claims Based On The Administrative Procedure Act And Common Law. ...................12

    E.    The Claims Against Paul J. Wiedefeld, WMATA's General Manager, Should Be Dismissed. ................................................13

III.    ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON UNSUCK'S PARP CLAIMS....................................13

    A.    Rule 12(d) And Rule 56 Legal Standards. ................................13

B. WMATA Correctly Withheld The Customer Satisfaction Survey Questions At Issue And Correctly Required Payment of Its Processing Fees. ........................................................................................14

 1. The Deliberative Process Privilege Covers The Survey Questions. ...............................................................................14

 2. The Withheld Survey Questions Constitute Confidential Business Information Protected By PARP Exemption 6.1.4. ........16

 3. The Qualified Commercial Privilege Is An Additional Basis For Withholding. ..........................................................17

C. Unsuck's Fee Claims Are Meritless. ..........................................................19

 1. Unsuck Failed To Request Or Establish Entitlement To A Fee Waiver. ..................................................................19

 2. Unsuck Failed To Exhaust Its Administrative Remedies As To Other PARP Requests. .............................................20

 3. WMATA Can Require Payment Of Outstanding Fees Before Processing Additional PARP Requests. ............................21

CONCLUSION ........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abtew v. Dep't of Homeland Sec.*,
    808 F.3d 895 (D.C. Cir. 2015) ................................................................14

*Act Now To Stop War & End Racism Coal. v. District of Columbia*,
    846 F.3d 391 (D.C. Cir. 2017) ...................................................................7

\* *Albra v. Bd. of Trs. of Miami Dade Coll.*,
    296 F. Supp. 3d 181 (D.D.C. 2018) ...............................................6, 7, 9, 10, 12

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) .................................................................10

*Baker & Hostetler LLP v. Dep't of Commerce*,
    473 F.3d 312 (D.C. Cir. 2006) .................................................................14

*Beebe v. WMATA*,
    129 F.3d 1283 (D.C. Cir. 1997) ..................................................................7

\* *Blakeney v. FBI*,
    No. 17-CV-2288 (BAH), 2019 WL 450678 (D.D.C. Feb. 5, 2019) .....................21

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ...................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................13

*CNA Fin. Corp. v. Donovan*,
    830 F.2d 1132 (D.C. Cir. 1987) .................................................................18

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,
    975 F.2d 871 (D.C. Cir. 1992) ..............................................................16, 17

\* *Crooker v. Secret Serv.*,
    577 F. Supp. 1218 (D.D.C. 1983) ...........................................................20, 21

\* *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) ..............................................................11, 12

*Ealy v. United States*,
    120 Fed. Cl. 801 (Fed. Cl. 2015) .................................................................9

*E.E.O.C. v. Swissport Fueling, Inc.,*
No. 10-cv-2101, 2012 WL 1648416 (D. Ariz. 2012) ...........................................................15

*Phillips ex rel. Estates of Byrd v. General Motors Corp.,*
307 F.3d 1206 (9th Cir. 2002) .......................................................................................18

*Gold Anti-trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.,*
762 F. Supp. 2d 123 (D.D.C. 2011) ...............................................................................13

* *Heffernan v. Azar,*
317 F. Supp. 3d 94 (D.D.C. 2018) ...........................................................................14, 16

*Hess v. Port Auth. Trans–Hudson Corp.,*
513 U.S. 30 (1994) ...........................................................................................................7

*Houchins v. KQED, Inc.,*
438 U.S. 1 (1978) ...........................................................................................................11

*Judicial Watch, Inc. v. Dep't of Energy,*
310 F. Supp. 2d 271 (D.D.C. 2004) ...........................................................................16, 17

*Kaufman v. Anglo-American Sch. of Sofia,*
28 F.3d 1223 (D.C. Cir. 1994) ........................................................................................8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) .........................................................................................................6

*LAPD v. United Reporting Publ'g Corp.,*
528 U.S. 32 (1999) .........................................................................................................12

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) .........................................................................................................7

*Mapother v. Dep't of Justice,*
3 F.3d 1533 (D.C. Cir. 1993) .........................................................................................14

*McBurney v. Young,*
569 U.S. 221 (2013) .......................................................................................................11

* *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.,*
774 F.3d 18 (D.C. Cir. 2014) .........................................................................................10

*Millennium Square Residential Ass'n v. 2200 M St., LLC,*
952 F. Supp. 2d 234 (D.D.C. 2013) ................................................................................8

*Morris v. WMATA,*
781 F.2d 218 (D.C. Cir. 1986) .........................................................................................7

*Nat'l Wildlife Fed'n v. United States Forest Serv.*,
  861 F.2d 1114 (9th Cir. 1988) .......................................................................................15

*Nat'l Parks and Conservation Ass'n v. Morton*,
  498 F.2d 765 (D.C. Cir. 1974)........................................................................................16

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978)........................................................................................................12

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975)........................................................................................................14

*The Plan Comm. v. PricewaterhouseCoopers, LLP*,
  335 B.R. 234 (D.D.C. 2005) .............................................................................................8

*Pritchett v. Stillwell*,
  604 A.2d 886 (D.C. 1992) .................................................................................................8

*Putnam v. Dep't of Justice*,
  880 F. Supp. 40 (D.D.C. 1995) .......................................................................................21

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980)........................................................................................................11

*Robinson v. Howard Univ., Inc.*,
  335 F. Supp. 3d 13 (D.D.C. 2018) .............................................................................10, 13

*Russell v. Dep't of the Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982)......................................................................................14

*S2 Automation LLC v. Micron Tech., Inc.*,
  283 F.R.D. 671 (D.N.M. 2012)........................................................................................18

* *Sisso v. Islamic Republic of Iran*,
  448 F. Supp. 2d 76 (D.D.C. 2006) ....................................................................................8

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950)........................................................................................................10

*United States v. El-Sayegh*,
  131 F.3d 158 (D.C. Cir. 1997)........................................................................................12

*United States v. Weber Aircraft Corp.*,
  465 U.S. 792 (1984)........................................................................................................17

* *Wadelton v. Dep't of State*,
  106 F. Supp. 3d 139 (D.D.C. 2015)......................................................................13, 15, 16

\* *White v. WMATA*,
  303 F. Supp. 3d 5 (D.D.C. 2018) ........................................................1, 7

*Wolfe v. HHS*,
  839 F.2d 768 (D.C. Cir. 1988) ...........................................................14

*Wood v. Moss*,
  572 U.S. 744 (2014) ...........................................................................10

**Constitution**

First Amendment ...........................................................5, 6, 11, 12, 21

Eleventh Amendment ....................................................................5, 7

**Statutes**

5 U.S.C. § 552 .........................................................................................1

5 U.S.C. § 552(a)(4)(A)(v) .................................................................21

5 U.S.C. § 552(b)(4) ..............................................................................2

5 U.S.C. § 552(b)(5) ..............................................................................2

5 U.S.C. § 701(a)(b)(1) .........................................................................9

5 U.S.C. § 704 ......................................................................................12

42 U.S.C. §§ 1981 ..................................................................................7

42 U.S.C. §§ 1983 ..................................................................................7

D.C. Code § 9-1107.01, art. II ........................................................1, 9

D.C. Code § 29-1102(5) .....................................................................8, 9

D.C. Code § 29-1109(a) .........................................................................8

Md. Code Ann. Transp. § 10-204 .......................................................1

Va. Code Ann. §§ 55-529 .....................................................................1

Va. Code Ann. §§ 56-530 .....................................................................1

**Federal Rules**

Fed. R. Civ. P. 12 ..................................................................................5

Fed. R. Civ. P. 12(b)(1)...................................................................................6, 7, 9, 21

Fed. R. Civ. P. 12(b)(6).........................................................6, 10, 12, 13, 21, 22

Fed. R. Civ. P. 12(d) ...................................................................................13

Fed. R. Civ. P. 17(b) ...................................................................................7, 8

Fed. R. Civ. P. 17(b)(3)...................................................................................8

Fed. R. Civ. P. 26(c) ...................................................................................18

Fed. R. Civ. P. 26(c)(1)(G) ...................................................................17, 18

Fed. R. Civ. P. 56...................................................................................6, 13, 21

Fed. R. Civ. P. 56(a) ...................................................................................13

**Other Authorities**

Charles A. Wright, et al., 8A *Fed. Prac. & Proc.* § 2043 (3d ed. 2010).......................18

Washington Metropolitan Area Transit Authority Compact, *available at*
   https://www.wmata.com/about/board/upload/Compact_Annotated_2009_final
   .pdf ...................................................................................1

Washington Metropolitan Area Transit Authority, Public Access to Records
   Policy ("PARP") , *available at*
   https://www.wmata.com/about/records/public_docs/upload/PI-209-
   203_Public-20Access-20to-20Records_FINAL-2001-2017-202019.pdf...............................1

PARP § 1...................................................................................1, 17

PARP § 6.1...................................................................................1

PARP § 6.1.4...................................................................................1

PARP § 6.1.5...................................................................................1

PARP §§ 8.1 - 8.3...................................................................................19

PARP §§ 8.1 - 8.5...................................................................................20

PARP § 8.2...................................................................................19

PARP § 8.4...................................................................................19

PARP § 8.6...................................................................................19, 20

PARP § 9.2.1................................................................................................................................20

PARP § 9.3.3................................................................................................................................13

**INTRODUCTION**

Fundamental flaws preclude the claims Plaintiff Unsuck DC Metro ("Unsuck") asserts to challenge Defendant Washington Metropolitan Area Transit Authority's ("WMATA") decision not to release most of its customer satisfaction survey questions.  Unsuck asserts claims under WMATA's Public Access to Records Policy ("PARP"), the Declaratory Judgment Act, the First Amendment, the Administrative Procedure Act ("APA"), and common law.  Each fails for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, or both.  The Complaint also fails on the merits because WMATA properly concluded that the requested survey questions are exempt from disclosure.

**WMATA AND THE PARP**

WMATA is a transit authority created by an interstate compact of the District of Columbia, State of Maryland, and Commonwealth of Virginia.  D.C. Code § 9-1107.01, art. II; Md. Code Ann. Transp. § 10-204; Va. Code Ann. §§ 55-529, 56-530; WMATA Compact, *available at* https://www.wmata.com/about/board/upload/Compact_Annotated_2009_final.pdf. *See generally White v. WMATA*, 303 F. Supp. 3d 5, 9 (D.D.C. 2018).  It makes official public records available for inspection and copying subject to specified exemptions through the PARP. PARP, *available at* https://www.wmata.com/about/records/public_docs/upload/PI-209-203_Public-20Access-20to-20Records_FINAL-2001-2017-202019.pdf.  WMATA interprets and applies the PARP consistent with the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and federal practice, PARP § 1, and the PARP's exemptions are modeled on FOIA's exemptions, *id.* § 6.1.[1]

---

[1] *Compare, e.g.*, PARP § 6.1.4 ("trade secrets and commercial or financial information obtained from a person and [that] is privileged or confidential") *and id.* § 6.1.5 ("intra-agency and inter-agency (WMATA Compact signatories and political subdivisions and representatives)

## FACTUAL BACKGROUND

On April 26, 2018, Unsuck submitted a PARP request to WMATA seeking a copy of WMATA's most recent customer satisfaction survey.  Compl. ¶ 10 (ECF No. 1, Apr. 29, 2019); Decl. of Lynn Bowersox ¶ 5 (Ex. 1).  WMATA denied the request based on PARP Exemption 6.1.5 on grounds of the deliberative process and self-evaluative privileges.  Compl. ¶ 11; Bowersox Decl. ¶ 6.  Unsuck appealed, stating that it was not interested in WMATA's process concerning the survey questions or answers to the survey questions, and that it was only seeking the survey questions.  Bowersox Decl. ¶ 7; *id.*, Attach. C.

On January 18, 2019, WMATA's administrative appeal panel generally upheld the decision that Exemption 6.1.5 applied, but reversed and remanded for determination of whether demographic survey questions could be released.  *Id.* ¶ 8; *id.*, Attach. D.  The decision explained that the customer satisfaction survey is part of WMATA's deliberative process for making decisions regarding improvements to WMATA's service and operations.  *Id.*, Attach. D at 3. "[T]he survey questions were carefully crafted by WMATA personnel/consultants and aimed at obtaining specific information from the riding public regarding demographic data, motivators of customer satisfaction, and improvement actions."  *Id.*, Attach. D at 4.

The decision further explained that the survey is kept confidential "to protect the integrity of the survey process and because publication would allow ill-intended persons to provide effective misinformation in response to the surveys, which could skew the results and analyses in ways that undermine WMATA operations and business processes."  *Id.*, Attach. D at 3.  The

---

memoranda or letters which would not be made available by law to a party in litigation with WMATA") *with* 5 U.S.C. § 552(b)(4) ("trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential") *and id.* § 552(b)(5) ("inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency").

decision continued, "WMATA does not release the questions or responses to these types of surveys to the general public because releasing this raw data would allow third parties to second-guess agency decision makers by, for example, revisiting the questions asked or the weight given to various responses." *Id.* at 4.

On remand, on March 27, 2019, WMATA determined that certain demographic survey questions and section headings should be released and provided Unsuck with a redacted version of the survey with those headings and questions visible. *Id.* ¶ 10; *id.*, Attach. E.  WMATA withheld the remainder of the survey under PARP Exemption 6.1.4, based on confidential business information, and under PARP Exemption 6.1.5, based on the deliberative process privilege and qualified commercial privilege. *Id*, Attach. E at 1.

The decision explained that WMATA and its contractor designed the survey questions and telephone interviewer instructions with the goals of maximizing survey completion rates and yielding the most reliable information for WMATA's business decisions. *Id.*, Attach. 3 at 1. WMATA explained that the survey and its methodology are protected as part of WMATA's deliberative process and as the confidential business information of its contractor. *Id.*  Also, the decision explained, Exemption 6.1.5 covers the survey because WMATA may reuse or refine the survey and the survey methodology for future research. *Id.*  WMATA does not publicize it to protect both the integrity of the deliberative process of which the survey is a part and the data resulting from the survey. *Id.* at 1-2.

WMATA's March 27 decision informed Unsuck that WMATA spent 5.5 hours processing Unsuck's PARP request for the customer satisfaction survey, waived the fees for the first two hours, and that the processing fees for the remaining 3.5 hours were $324.17. *Id*. ¶ 11, Attach. E

3

at 2.  The decision also informed Unsuck that its two other PARP requests would not be processed until it paid the fees for processing the survey request.  *Id.* 2.

Unsuck appealed, stating "LOL.  I re-appeal for an unredacted version" and "I appeal." Bowersox Decl. ¶ 12; *id.*, Attach. G.  The WMATA appeal panel reviewed and considered the appeal, and on April 5, 2019, the panel affirmed the March 27 decision for the reasons stated there.  *Id.* ¶ 13; *id.*, Attach. H.

On April 29, 2019, Unsuck filed this action, challenging WMATA's decisions to release only the redacted survey, to assess $324.17 in processing fees, and not to process Unsuck's two additional PARP requests until the processing fees here are paid.  Compl., Counts I-IV.

The attached Declaration of Lynn Bowersox, WMATA Senior Vice President for Customer Service, Communications and Marketing, explains that the WMATA customer satisfaction survey is an important part of WMATA's process for determining what service and operations improvements to make.  WMATA and its survey consultant created the survey based on the consultant's expertise in survey design and conducting surveys.  *Id.* ¶ 15.  The customer satisfaction survey, conducted quarterly, is a "key metric to understanding whether WMATA is deploying its resources effectively" and "informs WMATA's Executive Management Team as to a multitude of WMATA decisions, including scheduling, fare changes and customer service training."  *Id.* ¶ 14.

WMATA asks the same questions each time it conducts the survey so that responses serve as a benchmark against which future performance can be measured.  *Id.* ¶¶ 18-19.  The resulting trend data is "critical" because it allows WMATA "to identify and assess the status of its operations and areas to target for possible improvements."  *Id.* ¶ 18.  Disclosing the survey questions would jeopardize the integrity of the survey and reduce its value to WMATA.  *Id.* ¶ 22.

If the questions were disclosed, WMATA would have to discontinue the current survey questions, and pay a survey consultant to help it develop new questions each time it conducts the survey at a cost of approximately $1 to $2 million a year. *Id.* ¶ 21. WMATA also would lose the valuable trend data it currently generates, as well as the value of other surveys it conducts, if it were forced to use different questions for each survey. *Id.* ¶¶ 22-23.

## SUMMARY OF ARGUMENT

All of Unsuck's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12. WMATA's Eleventh Amendment immunity precludes jurisdiction over Unsuck's claims based on the Declaratory Judgment Act, APA and common law. Unsuck also lacks standing to assert claims based on the PARP, as well as the Declaratory Judgment Act and state common law, because it is an unincorporated association. Additionally, WMATA is not a federal agency subject to the APA.

Unsuck fails to state a claim for relief based on the First Amendment because it creates no right to WMATA's customer satisfaction survey questions. The Declaratory Judgment Act is not a claim for relief. The APA and common law claims are precluded by the PARP remedial scheme. And there is no basis for any of Unsuck's claims against WMATA General Manager Paul. J. Wiedefeld.

The Complaint also fails on the merits. The deliberative process privilege covers the withheld customer satisfaction survey questions because the survey is an important component of WMATA's deliberative process for determining improvements in service and operations. Making the survey questions publicly available would undermine the integrity of the survey and its value to WMATA. Disclosing the questions also would expose confidential business information of WMATA's survey consultant.

Lastly, Unsuck has not exhausted its administrative remedies for WMATA's assessment of fees for processing the survey request and WMATA's decision not to consider Unsuck's two other pending PARP requests until Unsuck has paid the outstanding fees.

For these reasons, elaborated below, Count I of the Complaint (PARP and Declaratory Judgment Act) should be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, summary judgment should be entered in Defendants' favor pursuant to Rule 56.  Count II (APA) should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).  Count III (First Amendment) should be dismissed pursuant to Rule 12(b)(6).  And Count IV (Common Law) should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

## ARGUMENT

I.     **The Court Lacks Subject Matter Jurisdiction Over Unsuck's Claims Based On The PARP, Declaratory Judgment Act, Administrative Procedure Act, And Common Law.**

A.     **Legal Standard for Rule 12(b)(1).**

The federal courts are of "limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *accord*, *e.g.*, *Albra v. Bd. of Trs. of Miami Dade Coll.*, 296 F. Supp. 3d 181, 185 (D.D.C. 2018).  "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377; *accord*, *e.g.*, *Albra*, 296 F. Supp. 3d at 185.

In deciding a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court accepts as true the uncontroverted material factual allegations of the complaint and construes them liberally in favor of the plaintiff.  *E.g.*, *Albra*, 296 F. Supp. 3d at 185.  However, "[t]he court need not accept inferences drawn by the plaintiff [] if those inferences are unsupported by

facts alleged in the complaint or amount merely to legal conclusions." *Id.* (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B.      WMATA's Eleventh Amendment Immunity Precludes Unsuck's Claims Based On The Declaratory Judgment Act, The Administrative Procedure Act, And Common Law.**

When the District of Columbia, Maryland, and Virginia created WMATA, they conferred on it their respective sovereign immunities. *White*, 303 F. Supp. 3d at 9; *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citing *Morris v. WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986); *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 49–50 (1994)). WMATA is thus an "arm of the state" and cloaked with Eleventh Amendment immunity from suit in federal court absent consent. *White*, 303 F. Supp. 3d at 9, 10. Accordingly, in *White*, this Court dismissed claims against WMATA for which consent had not been given. *Id.* (dismissing claims against WMATA under the District of Columbia Human Rights Act, Americans with Disabilities Act, and 42 U.S.C. §§ 1981 and 1983).

Neither the District of Columbia, Maryland, Virginia, nor WMATA has consented to claims against WMATA based on the APA, common law, or the Declaratory Judgment Act. Pursuant to Rule 12(b)(1), the Court should dismiss Count I of the Complaint insofar as it is based on the Declaratory Judgment Act, and it should dismiss Counts II (APA) and IV (common law) in their entirety. *See White*, 303 F. Supp. 3d at 9.

**C.      Unsuck Lacks Standing To Assert Claims Based On The PARP, The Declaratory Judgment Act, And State Common Law.**

It is Unsuck's burden to establish standing. *Act Now To Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 400 (D.C. Cir. 2017) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Federal Rule of Civil Procedure 17(b) provides that the capacity of an

unincorporated association to sue is determined by "the law of the state where the court is located," except for claims that seek to "enforce a substantive right existing under the United States Constitution or laws."  Fed. R. Civ. P. 17(b)(3) & (3)(A). [2]

District of Columbia law provides that as a general rule an unincorporated association does not have standing to sue.  *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 91 (D.D.C. 2006) ("D.C. law does not permit an unincorporated association to sue or be sued directly.") (citing *Pritchett v. Stillwell*, 604 A.2d 886, 889 (D.C. 1992); *Kaufman v. Anglo-American Sch. of Sofia*, 28 F.3d 1223, 1225 (D.C. Cir. 1994); *The Plan Comm. v. PricewaterhouseCoopers, LLP*, 335 B.R. 234, 243 n.5 (D.D.C. 2005)).  The D.C. Code provides an exception for unincorporated *nonprofit* associations.  D.C. Code § 29-1109(a) ("An unincorporated nonprofit association shall have the capacity to sue and be sued in its own name.").  An unincorporated nonprofit association is "an unincorporated organization, consisting of 2 or more members joined under an agreement that is oral, in a record, or implied from conduct, for one or more common, *nonprofit* purposes."  D.C. Code § 29-1102(5) (emphasis supplied).

Unsuck does not allege that it is a nonprofit association.  It only alleges that it "is an unincorporated association."  Compl. ¶ 4.  Unsuck thus fails to satisfy the D.C. statutory criterion for standing to bring this action as an unincorporated nonprofit association.  D.C. Code § 29-1102(5).  Under Fed. R. Civ. P. 17(b), Unsuck is without standing to maintain any of its claims that are not grounded in the Constitution or substantive federal right. [3]  *Sisso*, 448 F. Supp. 2d at 91; *see also Millennium Square Residential Ass'n v. 2200 M St., LLC*, 952 F. Supp. 2d 234, 243-44 (D.D.C. 2013) (concluding that claims must be dismissed because the defendant was not an

---

[2] The Complaint does not indicate whether its common law claim relies on state or federal common law.  *See* Compl., Count IV.

[3] The Declaratory Judgment Act creates no federal right.  *See* section II(B), below.

unincorporated nonprofit association under D.C. Code § 29-1102(5)).  Unsuck therefore lacks

standing to assert claims under the PARP and the Declaratory Judgment Act (Count I) and under

non-federal common law (Count IV).  Those claims should be dismissed for lack of standing.

> ### D.      WMATA Is Not Subject To The Administrative Procedure Act.

Unsuck's APA claim, in addition to being precluded by WMATA's immunity, falls

outside the Court's subject matter jurisdiction because WMATA is not a federal agency.  The

APA applies only to federal agencies.  5 U.S.C. § 701(a)(b)(1) (defining "agency" as "each

authority of the Government of the United States"); *Albra*, 296 F. Supp. 3d at 188 ("the APA

applies only to federal agencies and 'may not be used to review the actions of . . . state

entities.'") (quoting *Ealy v. United States*, 120 Fed. Cl. 801, 805 (Fed. Cl. 2015)).  It does not

apply to non-federal agencies, including state agencies.  *Albra*, 296 F. Supp. 3d at 188.

As previously explained, WMATA is an interstate compact agency and an instrumentality

and agency of each of the District of Columbia, Maryland, and Virginia.  D.C. Code § 9-1107.01,

art. II.  Because WMATA is not a federal agency and instead is an agency of each of the District

of Columbia, Maryland, and Virginia, it is not subject to the APA.  *See Albra*, 296 F. Supp. 3d at

188.  Unsuck's APA claim (Count II of the Complaint) therefore should be dismissed pursuant to

Rule 12(b)(1) for lack of subject matter jurisdiction.  *Id.* (dismissing APA claim asserted against

state entity for lack of subject matter jurisdiction).

II.     **Unsuck's Claims Under The Declaratory Judgment Act, First Amendment, Administrative Procedure Act, And Common Law Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.**

   A.     **Rule 12(b)(6) Legal Standard.**

Under Rule 12(b)(6), the court determines whether the factual allegations of the complaint are sufficient to state a claim for relief that is "'plausible on its face.'"  *Albra*, 296 F. Supp. 3d at 186 (quoting *Wood v. Moss*, 572 U.S. 744, 757-58 (2014)).

   B.     **Unsuck's Claim Under The Declaratory Judgment Act Fails.**

As set forth above, the Court lacks subject matter jurisdiction over Unsuck's claim based on the Declaratory Judgment Act.  *See* section I(B) & (C), above.  Unsuck also fails to state a claim upon which relief can be granted because the Declaratory Judgment Act does not create a claim for relief.  *See Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014) ("The Declaratory Judgment Act . . . does not 'provide a cause of action.'") (citing *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)).  "A request for declaratory judgment constitutes a form of relief, not a cause of action."  *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 32 (D.D.C. 2018) (internal quotation marks and citation omitted); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only.  Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.") (internal quotation marks and citation omitted); *Ali*, 649 F.3d at 778 ("It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction.  Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right.") (internal quotation marks and citations omitted).  Count I of the Complaint insofar as it relies on the Declaratory Judgment Act therefore should be dismissed pursuant to Rule 12(b)(6).

C.        **Unsuck's First Amendment Claim Fails.**

"[T]he First Amendment [does not] . . . mandate[] a right of access to government information." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978).  "The Constitution itself is [not] a Freedom of Information Act." *Id.* at 14.  "Th[e Supreme] Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws." *McBurney v. Young*, 569 U.S. 221, 232 (2013).

The D.C. Circuit set forth the scope of the First Amendment right of access to information in *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003). The plaintiffs there sought information from the Department of Justice pursuant to both FOIA and the First Amendment.  *Id.* at 922.  The D.C. Circuit, in addition to concluding that the materials were exempt from disclosure under FOIA, rejected the plaintiffs' theory that the First Amendment required disclosure.  *Id.* at 935.  It explained that the First Amendment right of access is "narrow" and "does not extend to non-judicial documents that are not part of a criminal trial." *Id.* at 934.  *See also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (recognizing a limited right of access to a criminal trial because the First Amendment "was enacted against the backdrop of the long history of [criminal] trials being presumptively open.").

Unlike FOIA, the First Amendment does not create a presumption of disclosure.  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 934 ("In accord with its plain language, the First Amendment broadly protects the freedom of individuals and the press to speak or publish.  It does not expressly address the right of the public to receive information.  Indeed, in contrast to FOIA's statutory presumption of disclosure, the First Amendment does not 'mandate[] a right of access to government information or sources of information within the government's control.'") (quoting *Houchins*, 438 U.S. at 15).  The First Amendment right of access does not extend beyond court proceedings.  *See LAPD v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999)

11

(no First Amendment right to receive addresses of arrestees); *see also Ctr. For Nat'l Sec. Studies*, 331 F.3d at 935 (declining to "convert the First Amendment right of access to criminal judicial proceedings into a requirement that the government disclose information compiled during the exercise of a quintessential government power.").

Thus, there is no First Amendment right of access here, so the Court should dismiss Count II of the Complaint pursuant to Rule 12(b)(6).

### D.   The PARP's Remedy Precludes Unsuck's Claims Based On The Administrative Procedure Act And Common Law.

As set forth above, the Court lacks subject matter jurisdiction over Unsuck's claim under the APA because WMATA is not a federal agency.  *See* section I(D), above.  Even if WMATA were subject to the APA, which it is not, the APA would be inapplicable because the PARP supplies an adequate remedy for Unsuck.  *See* 5 U.S.C. § 704 (providing that the APA applies to "[a]gency action made reviewable by statute and final agency action for which there is *no other adequate remedy in a court*.") (emphasis supplied); *Albra*, 296 F. Supp. 3d at 187-88 (adequate remedy foreclosed APA review).  Count III of the Complaint thus fails to state a claim upon which relief can be granted, so it should be dismissed under Rule 12(b)(6).

Similarly, Unsuck's claim based on common law (Count IV of the Complaint), in addition to being barred by Unsuck's lack of standing and WMATA's immunity, *see* section I(A) & (B), above, is preempted by the PARP.  The D.C. Circuit has recognized that FOIA preempts a common law right of access to government information.  *Ctr. For Nat'l Sec. Studies*, 331 F.3d at 936-37 (FOIA "provides an extensive statutory regime for Plaintiffs to request the information they seek.") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599, 603-06 (1978), *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)).

Count IV therefore should be dismissed pursuant to Rule 12(b)(6).

**E.   The Claims Against Paul J. Wiedefeld, WMATA's General Manager, Should Be Dismissed.**

Unsuck identifies no basis for naming WMATA General Manager Paul J. Wiedefeld as a defendant in this action.  The Complaint does not allege that Mr. Wiedefeld took any action with respect to Unsuck that would give rise to any of the claims asserted against him.  It challenges WMATA's response to Unsuck's request under the PARP, and the PARP provides a remedy only against WMATA (where a court finds that WMATA has improperly withheld records).  PARP § 9.3.3.  The claims against Mr. Wiedefeld should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## III.   ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON UNSUCK'S PARP CLAIMS.

### A.   Rule 12(d) And Rule 56 Legal Standards.

Rule 12(d) permits a court to convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 where the motion relies on materials outside the pleadings.  Fed. R. Civ. P. 12(d); *Robinson v. Howard Univ., Inc*., 335 F. Supp. 3d 13, 21 (D.D.C. 2018).  Summary judgment under Rule 56 is warranted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is typically the appropriate vehicle for resolution of FOIA cases.  *E.g.*, *Wadelton v. Dep't of State*, 106 F. Supp. 3d 139, 145 (D.D.C. 2015) (citing *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011)).

**B.     WMATA Correctly Withheld The Customer Satisfaction Survey Questions At Issue And Correctly Required Payment of Its Processing Fees.**

**1.     The Deliberative Process Privilege Covers The Survey Questions.**

PARP Exemption 6.1.5, like FOIA Exemption 5, incorporates government privileges including the deliberative process privilege.  *See supra* at 1 & n.1; *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citing *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)).   The deliberative process privilege "ensures that agencies are not 'forced to operate in a fishbowl.'"  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988)).  It "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Abtew*, 808 F.3d at 898 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted).  It reflects the principle that "officials should be judged by what they decided, not for matters they considered before making up their minds."  *Id.* (quoting *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).  In considering whether a document falls within the deliberative process privilege, courts consider whether the agency has identified the applicable deliberative process with which the document is involved, the role of the document in that process, and the nature of the decisionmaking authority of the parties issuing the document and their position in the chain of command.  *Heffernan v. Azar*, 317 F. Supp. 3d 94, 118 (D.D.C. 2018) (citing cases).

Ms. Bowersox's Declaration explains the importance of the customer satisfaction survey to WMATA's process for determining which service and operations improvements to make.  Bowersox Decl. ¶¶ 14, 18-22.  WMATA's methodology of asking the same questions every time WMATA conducts the survey enables WMATA to use the periodic survey as a benchmark of

14

performance against which future performance can be measured, and thereby obtain critical trend data.  *Id*. ¶¶ 18-19.  Disclosing the survey questions would make the survey vulnerable to skewed results and thereby reduce its value to WMATA.  *Id.* ¶ 20.  Indeed, this risk is one reason the survey is conducted by telephone and closed online link.  *Id.* ¶ 17.

Disclosing the survey questions that WMATA redacted would force WMATA to alter its deliberative process.  *Id.* ¶ 21.  If the survey questions were disclosed, WMATA would be compelled to discontinue them and ask different questions in each survey.  *Id.*  WMATA would have to pay a survey consultant to craft the different questions at substantial expense.  *Id.*  Yet even with that additional expense, the survey still would have lost its value as a benchmark of performance and would be of reduced value to WMATA's decision-making process.  *Id.* ¶ 22.

In *Wadelton*, this Court upheld the agency's assertion of the deliberative process privilege over questionnaires that the agency's Office of Inspector General used as part of an investigation. 106 F. Supp. 3d at 154.  This Court found that "[t]he questions posed are themselves predecisional and deliberative as they shed light on which facts OIG felt required development and the manner in which OIG went about developing those facts."  *Id.*  This Court cited *E.E.O.C. v. Swissport Fueling, Inc.*, which recognized that "[w]here either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are 'inextricably intertwined' with 'policy making processes,' the material is [subject to the privilege]."  No. 10-cv-2101, 2012 WL 1648416, at *16 (D. Ariz. 2012) (quoting *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988)) (alterations in original). Like the questions at issue in *Wadelton*, the withheld customer satisfaction survey questions "shed light" on the facts that WMATA feels require development to inform its decisions about

15

which areas of service and operations to target for improvements, as well as the manner in which WMATA goes about developing those facts.  Bowersox Decl. ¶¶ 18-22.

In *Heffernan*, this Court found that agency plans for a focus group and the results of a survey, among other things, were protected by the deliberative process privilege.  *Heffernan*, 317 F. Supp. 3d at 130-31.  The agency had explained that the plans and survey results "were part of the deliberative process of [an agency department] as it worked to make decisions about its services, policies, procedures, and offerings."  *Id.* at 130-31.  Likewise here, the customer satisfaction survey is part of WMATA's deliberative process for making decisions about its service and operations.  Bowersox Decl. ¶¶ 18-22.

As in *Wadelton* and *Heffernan*, the withheld customer satisfaction survey questions are part of WMATA's deliberative process.  WMATA correctly withheld them pursuant to PARP Exemption 6.1.5, so Defendants are entitled to summary judgment on Unsuck's PARP claim.

## 2.    The Withheld Survey Questions Constitute Confidential Business Information Protected By PARP Exemption 6.1.4.

PARP Exemption 6.1.4, like FOIA Exemption 4, covers confidential business information.  It promotes "the interest of the government in operating efficiently and effectively by enabling it to obtain necessary commercial and financial information from private persons and business entities," and "also protects the competitive interests of the suppliers of such information."  *Judicial Watch, Inc. v. Dep't of Energy*, 310 F. Supp. 2d 271, 307 (D.D.C. 2004) (citing *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 873 (D.C. Cir. 1992) (en banc)); *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 768 (D.C. Cir. 1974)).  Where information is voluntarily provided to an agency (as opposed to compelled), it is considered "confidential" for purposes of the exemption if "it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Critical*

*Mass Energy Project*, 975 F.2d at 879; *accord, e.g.*, *Judicial Watch, Inc.*, 310 F. Supp. 2d at 307.

"So long as th[e] information is provided voluntarily, and so long as it is of a kind that [the

supplier of the information] customarily withholds from the public, it must be treated as

confidential." *Critical Mass Energy Project*, 975 F.2d at 880.

Here, the Bowersox Declaration explains that WMATA's consultant Morpace employed

its expertise in survey design and conducting surveys to assist with the development of the

customer satisfaction survey.  Bowersox Decl. ¶¶ 15-16.  The survey thus represents the work

product of Morpace as well as WMATA.  *Id.* ¶ 16.  WMATA instructed Morpace to keep the

survey questions confidential, *id.* ¶ 17, and Morpace cannot be expected to customarily release

survey questions like those at issue where the survey purchaser has instructed that they be kept

confidential.

The withheld customer satisfaction survey questions, therefore, constitute confidential

business information.  WMATA properly relied on PARP Exemption 6.1.4 as an additional basis

for withholding the questions.  *See Critical Mass Energy Project*, 975 F.2d at 879.

### 3.    The Qualified Commercial Privilege Is An Additional Basis For Withholding.

Exemption 5 of FOIA incorporates a qualified commercial privilege that includes

protections applicable in civil discovery.  *United States v. Weber Aircraft Corp.*, 465 U.S. 792,

799-800 (1984).  That privilege is thus also a component of PARP 6.1.5.  PARP § 1.  Federal

Rule of Civil Procedure 26(c)(1)(G) authorizes protective orders in civil discovery "requiring

that a trade secret or other confidential research, development, or commercial information not be

revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).

The Bowersox Declaration explains that WMATA developed the customer satisfaction

survey with its survey consultant and based on the consultant's survey expertise to help it gauge

and improve its service and operations.  Bowersox Decl. ¶¶ 16, 18-22.  WMATA paid Morpace for the survey, the survey constitutes WMATA's work product and intellectual property, and WMATA would be harmed by its disclosure.  *Id.* ¶¶ 14, 16, 20-23.  *See also CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1162 (D.C. Cir. 1987) (recognizing that agencies "occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling their knotty complexities.").

The customer satisfaction survey is the sort of information that would be appropriately covered by a protective order under Rule 26(c)(1)(G).  *See S2 Automation LLC v. Micron Tech., Inc.*, 283 F.R.D. 671, 681 (D.N.M. 2012) ("Intellectual property, trade secrets, and other sensitive commercial information . . . fall[s] within the scope of permissible protective orders under rule 26(c).").  *See also* Charles A. Wright, et al., 8A *Fed. Prac. & Proc.* § 2043 (3d ed. 2010) ("The law [] gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information.  Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure.") (quoting *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)) (emphasis in original).

WMATA therefore properly relied on the qualified commercial privilege as an additional basis for withholding the customer satisfaction survey questions.  *See* Fed. R. Civ. P. 26(c)(1)(G); 8A *Fed. Prac. & Proc.* § 2043.

### C.      Unsuck's Fee Claims Are Meritless.

#### 1.      Unsuck Failed To Request Or Establish Entitlement To A Fee Waiver.

The PARP provides for fee waivers when records are sought for educational, noncommercial scientific or scholarly purposes, when they are made by a representative of the news media, and when disclosure of the records is in the public interest because it is likely to contribute significantly to public understanding of WMATA's operations and is not primarily in the requester's commercial interest.  PARP §§ 8.2, 8.4.[4]  Neither Unsuck's PARP request nor either of its appeals requested a waiver of the fee for processing its request for the customer satisfaction survey or demonstrated any of the grounds for a fee waiver provided by the PARP. *See* Bowersox Decl., Attachs. A, C, G.  Contrary to the Complaint's suggestion that WMATA should have notified Unsuck of the processing fees before incurring the costs, Compl. ¶ 20, the PARP provides for such advance notice only where a fee waiver has been requested.  PARP

---

[4] PARP § 8.2 provides:

Fees shall be limited to the charges for copying when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution; whose purpose is scholarly or scientific research; or a representative of the news media.

PARP § 8.4 provides:

WMATA will furnish without charge or at a charge reduced below the fees established in sections 8.1 - 8.3, if WMATA determines that the disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations of WMATA and is not primarily in the commercial interest of the Requester.

§ 8.6.[5]  Defendants are therefore entitled to summary judgment on Unsuck's challenge to

WMATA's fee assessment.

>       **2.      Unsuck Failed To Exhaust Its Administrative Remedies As To Other
>               PARP Requests.**

Under both the PARP and FOIA, before a plaintiff may challenge a decision not to

process a request until outstanding fees are paid, it must exhaust its administrative remedies.

PARP § 9.2.1 ("A Requester must exhaust the administrative appeal process, before seeking

judicial review of a denial of request for records or a fee waiver."); *Crooker v. Secret Serv.*, 577

F. Supp. 1218, 1220 (D.D.C. 1983) (dismissing for failure to exhaust administrative remedies

challenge to refusal to process FOIA request based on failure to pay fees for previous FOIA

request).

Unsuck has not alleged it requested and has not requested that WMATA waive the

requirement that Unsuck pay its outstanding fees before its two additional PARP requests are

processed.  *See* Compl.; Bowersox Decl., Attach. A (Unsuck's original PARP request); *id.*,

Attach. C (Unsuck's May 14, 2018 appeal); *id.*, Attach. G (Unsuck's May 27, 2019 appeal).  The

PARP provides an administrative procedure through which Unsuck could make a fee waiver

request.  PARP § 8.6 (fee waiver request procedure).  Because Unsuck has not availed itself of

---

[5] PARP § 8.6 provides:

>     Requests for waiver or reduction [of] fees shall be in writing.  The PARP
>     Administrator shall determine whether fees shall be reduced or waived in
>     accordance with sections 8.1 through 8.5 and shall provide the Requester a written
>     response to a waiver request prior to incurring costs to respond to the request.  If
>     only some of the requested records satisfy the requirements for a waiver or
>     reduction of fees, a waiver or reduction may be granted for those qualifying
>     records.  If a request for waiver is denied, the Requester must confirm an
>     agreement to pay fees before WMATA will incur costs to respond to the request.

that mechanism, it has failed to exhaust its administrative remedies as to WMATA's decision not

to process its two pending requests, so Defendants are entitled to summary judgment on

Unsuck's challenge to that decision.  *See, e.g.*, *Crooker*, 577 F. Supp. at 1220.

### 3. WMATA Can Require Payment Of Outstanding Fees Before Processing Additional PARP Requests.

Even if Unsuck had exhausted administrative remedies, its challenge as to the two

pending PARP requests would fail.  This Court has recognized that "an agency 'may require

advance payment of any fee [if] the requester has previously failed to pay fees in a timely

fashion[.]'"  *Blakeney v. FBI*, No. 17-CV-2288 (BAH), 2019 WL 450678, at *7 (D.D.C. Feb. 5,

2019) (quoting 5 U.S.C. § 552(a)(4)(A)(v)) (alterations in original); *see also Putnam v. Dep't of

Justice*, 880 F. Supp. 40, 42 (D.D.C. 1995) ("The FBI is permitted to require payment of search

and copying fees, including outstanding fees, before releasing material to plaintiff.") (alterations

and internal citations omitted).  Accordingly, WMATA permissibly decided not to process

Unsuck's additional PARP requests until its outstanding fees are paid.

### CONCLUSION

None of Unsuck's claims is properly before the Court, and even if they were Defendants

would be entitled to summary judgment because WMATA responded to Unsuck's request for the

customer satisfaction survey consistent with the PARP and applicable FOIA caselaw.  Count I of

the Complaint (PARP and Declaratory Judgment Act) should be dismissed pursuant to Rule

12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, alternatively, summary

judgment should be entered in Defendants' favor on Count I pursuant to Rule 56.  Count II

(APA) should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6).  Count III (First Amendment)

should be dismissed pursuant to Rule 12(b)(6).  And Count IV (Common Law) should be

dismissed pursuant to Rule 12(b)(1) and 12(b)(6).

Dated: June 11, 2019                    Respectfully submitted,

                                        /s/ Caroline L. Wolverton
                                        Anthony T. Pierce
                                           D.C. Bar. No. 415263
                                        Rex S. Heinke
                                           admitted pro hac vice
                                        Caroline L. Wolverton
                                           D.C. No. Bar 496433
                                        AKIN GUMP STRAUSS HAUER & FELD, LLP
                                        2001 K Street, N.W.
                                        Washington, D.C. 20006
                                        Phone: (202) 887-4107
                                        Fax: (202) 887-4288
                                        cwolverton@akingump.com

                                        *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                                                                                      |   |                              |
|------------------------------------------------------------------------------------------------------|---|------------------------------|
| UNSUCK DC METRO,<br>2200 North Westmoreland Street<br>Arlington, VA 22213,                           | ) |                              |
|                                                                                                      | ) |                              |
| Plaintiff,                                                                                           | ) |                              |
|                                                                                                      | ) |                              |
| v.                                                                                                   | ) | Civil Action No. 19-1242-TSC |
|                                                                                                      | ) |                              |
| WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY,<br>600 Fifth Street, N.W.<br>Washington, DC 20001, | ) |                              |
|                                                                                                      | ) |                              |
| and                                                                                                  | ) |                              |
|                                                                                                      | ) |                              |
| PAUL J. WIEDEFELD, in his official capacity<br>as General Manager of the Washington<br>Metropolitan Area Transit Authority,<br>600 Fifth Street, N.W.<br>Washington, DC 20001, | ) |                              |
|                                                                                                      | ) |                              |
| Defendants.                                                                                          | ) |                              |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h)(1), Defendants respectfully submit the following statement of material facts as to which there should be no genuine issue.

1.      On April 26, 2018, Unsuck submitted a Public Access to Records Policy ("PARP") request to Washington Metropolitan Area Transit Authority ("WMATA") seeking a copy of WMATA's most recent customer satisfaction survey.  Compl. ¶ 10 (ECF No. 1, Apr. 29, 2019); Decl. of Lynn Bowersox ¶ 5 (Ex. 1).

2.      WMATA denied the request based on PARP Exemption 6.1.5 on grounds of the deliberative process and self-evaluative privileges.  Compl. ¶ 11; Bowersox Decl. ¶ 6.

3.      Unsuck appealed, stating that it was not interested in WMATA's process concerning the survey questions or answers to the survey questions, and that it was only seeking the survey questions.  Bowersox Decl. ¶ 7; *id.*, Attach. C.

4.      On January 18, 2019, WMATA's administrative appeal panel generally upheld the decision that Exemption 6.1.5 applied, but reversed and remanded for determination of whether demographic survey questions could be released.  *Id*. ¶ 8; *id.*, Attach. D.

5.      The decision explained that the customer satisfaction survey is part of WMATA's deliberative process for making decisions regarding improvements to WMATA's service and operations.  *Id.*, Attach. D at 3.

6.      "[T]he survey questions were carefully crafted by WMATA personnel/consultants and aimed at obtaining specific information from the riding public regarding demographic data, motivators of customer satisfaction, and improvement actions."  *Id.*, Attach. D at 4.

7.      The decision further explained that the survey is kept confidential "to protect the integrity of the survey process and because publication would allow ill-intended persons to provide effective misinformation in response to the surveys, which could skew the results and analyses in ways that undermine WMATA operations and business processes."  *Id.*, Attach. D at 3.

8.      The decision continued, "WMATA does not release the questions or responses to these types of surveys to the general public because releasing this raw data would allow third parties to second-guess agency decision makers by, for example, revisiting the questions asked or the weight given to various responses."  *Id.* at 4.

9.     On remand, on March 27, 2019, WMATA determined that certain demographic survey questions and section headings should be released and provided Unsuck with a redacted version of the survey with those headings and questions visible.  *Id.* ¶ 10; *id.*, Attach. E.

10.    WMATA withheld the remainder of the survey under PARP Exemption 6.1.4, based on confidential business information, and under PARP Exemption 6.1.5, based on the deliberative process privilege and qualified commercial privilege.  *Id*, Attach. E at 1.

11.    The decision explained that WMATA and its contractor designed the survey questions and telephone interviewer instructions with the goals of maximizing survey completion rates and yielding the most reliable information for WMATA's business decisions.  *Id.*, Attach. 3 at 1.

12.    WMATA explained that the survey and its methodology are protected as part of WMATA's deliberative process and as the confidential business information of its contractor.  *Id.* Also, the decision explained, Exemption 6.1.5 covers the survey because WMATA may reuse or refine the survey and the survey methodology for future research.  *Id.*

13.    WMATA does not publicize the survey to protect both the integrity of the deliberative process of which the survey is a part and the data resulting from the survey.  *Id.* at 1-2.

14.    WMATA's March 27 decision informed Unsuck that WMATA spent 5.5 hours processing Unsuck's PARP request for the customer satisfaction survey, waived the fees for the first two hours, and that the processing fees for the remaining 3.5 hours were $324.17.  *Id*. ¶ 11, Attach. E at 2.

15.    The decision also informed Unsuck that its two other PARP requests would not be processed until it paid the fees for processing the survey request.  *Id.* 2.

16.     Unsuck appealed, stating "LOL.  I re-appeal for an unredacted version" and "I appeal."  *Id*. ¶ 12; *id.*, Attach. G.

17.     The WMATA appeal panel reviewed and considered the appeal, and on April 5, 2019, the panel affirmed the March 27 decision for the reasons stated there.  *Id.* ¶ 13; *id.*, Attach. H.

18.     The WMATA customer satisfaction survey is an important part of WMATA's process for determining what service and operations improvements to make.  Bowersox Decl. ¶ 14.

19.     WMATA and its survey consultant created the survey based on the consultant's expertise in survey design and conducting surveys.  *Id.* ¶ 15.

20.     The customer satisfaction survey, conducted quarterly, is a "key metric to understanding whether WMATA is deploying its resources effectively" and "informs WMATA's Executive Management Team as to a multitude of WMATA decisions, including scheduling, fare changes and customer service training."  *Id.* ¶ 14.

21.     WMATA asks the same questions each time it conducts the survey so that responses serve as a benchmark against which future performance can be measured.  *Id.* ¶¶ 18-19.

22.     The resulting trend data is "critical" because it allows WMATA "to identify and assess the status of its operations and areas to target for possible improvements."  *Id.* ¶ 18.

23.     Disclosing the survey questions would jeopardize the integrity of the survey and reduce its value to WMATA.  *Id.* ¶  22.

24.    If the questions were disclosed, WMATA would have to discontinue the current survey questions, and pay a survey consultant to help it develop new questions each time it conducts the survey at a cost of approximately $1 to $2 million a year.  *Id.* ¶ 21.

25.    WMATA also would lose the valuable trend data it currently generates if it were forced to use different questions for each survey.  *Id.* ¶ 22.


Dated: June 11, 2019                     Respectfully submitted,

                                         /s/ Caroline L. Wolverton
                                         Anthony T. Pierce
                                            D.C. Bar. No. 415263
                                         Rex S. Heinke
                                            admitted pro hac vice
                                         Caroline L. Wolverton
                                            D.C. No. Bar 496433
                                         AKIN GUMP STRAUSS HAUER & FELD, LLP
                                         2001 K Street, N.W.
                                         Washington, D.C. 20006
                                         Phone: (202) 887-4107
                                         Fax: (202) 887-4288
                                         cwolverton@akingump.com

                                         *Attorneys for Defendants*