# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNSUCK DC METRO,                                )
2200 North Westmoreland Street                  )
Arlington, VA 22213,                            )
                                                )
Plaintiff.                                      )
                                                )
v.                                              )          Civil Action No. 19-1242-TSC
                                                )
WASHINGTON METROPOLITAN AREA                    )
TRANSIT AUTHORITY,                              )
600 Fifth Street, N.W.                          )
Washington, DC 20001,                           )
                                                )
and                                             )
                                                )
PAUL J. WIEDEFELD, in his official capacity     )
as General Manager of the Washington            )
Metropolitan Area Transit Authority,            )
600 Fifth Street, N.W.                          )
Washington, DC 20001,                           )
                                                )
Defendants.                                     )
_____ )

## DECLARATION OF LYNN BOWERSOX

I, Lynn Bowersox, declare:

1.      I am Senior Vice President for Customer Service, Communications, and

Marketing at the Washington Metropolitan Area Transit Authority ("WMATA").  I have held this

position since 2009.

2.      My duties include oversight of WMATA's customer satisfaction survey and

contributing to responses to records requests made pursuant to WMATA's Public Access to

Records Policy ("PARP").

3.      I have worked in transit for over twenty years.  Before joining WMATA, I held

management positions at New Jersey Transit and Amtrak where I had direct and indirect

responsibilities for communications and responses to records requests, among other things.

4.      I make this declaration based upon my personal knowledge and information available to me in my official capacity.

5.      On April 26, 2018, Plaintiff Unsuck DC Metro ("Unsuck") submitted a PARP request to WMATA seeking a copy of WMATA's most recent customer satisfaction survey. (Attach. A)

6.      On May 14, 2018, WMATA denied the request based on PARP Exemption 6.1.5 on grounds of the deliberative process and self-evaluative privileges.  (Attach. B)  The denial explained that "WMATA carefully crafts the survey questions to help it to obtain accurate information used in making decisions regarding operations and ridership.  Therefore, WMATA does not publicize these questions in order to protect the integrity of the process and the resulting data."  (*Id.*)

7.      Also on May 14, 2018, Unsuck appealed, stating that it was "clarify[ing]" that it was not interested in WMATA's process concerning the survey questions or answers to the survey questions, and that it was seeking the final survey questions.  (Attach. C)

8.      On January 18, 2019, WMATA's administrative appeal panel generally upheld the decision that Exemption 6.1.5 covered the survey questions, but partially reversed and remanded for determination of whether demographic survey questions were segregable and could be released.  (Attach. D)

9.      The January 18 decision explained that the customer satisfaction survey is part of WMATA's deliberative process for making decisions regarding actions and improvements to WMATA's service and operations.  (*Id.* at 3)  "[T]he survey questions were carefully crafted by WMATA personnel/consultants and aimed at obtaining specific information from the riding public regarding demographic data, motivators of customer satisfaction, and improvement

2

actions." (*Id.* at 4)  The survey is kept confidential, the decision explained, "to protect the integrity of the survey process and because publication would allow ill-intended persons to provide effective misinformation in response to the surveys, which could skew the results and analyses in ways that undermine WMATA operations and business processes." (*Id.* at 3) "WMATA does not release the questions or responses to these types of surveys to the general public because releasing this raw data would allow third parties to second-guess agency decision makers by, for example, revisiting the questions asked or the weight given to various responses, and could allow third parties who wish to thwart the process in the future, to devise means of skewing future survey results." (*Id.* at 4)

10.     On March 27, 2019, on remand, WMATA determined that certain demographic survey questions and section headings should be released and provided a redacted version of the survey to Unsuck with those headings and questions visible.  WMATA Decision of Mar. 27, 2019 (Attach. E); Redacted Survey (Attach. F)  WMATA withheld the remainder of the survey under PARP Exemption 6.1.4, based on confidential business information, and under PARP Exemption 6.1.5, based on deliberative process privilege and qualified commercial privilege.  (Attach. E at 1)  The decision explained that WMATA and its contractor developed the survey sampling plan and screening questions (pages 1-4 of the survey document) to ensure that there was sufficient representation of all geographic areas in WMATA's service region.  (*Id.*)  The survey was conducted by telephone, and the telephone interviewer instructions and substantive survey questions (pages 5-27 of the survey document) are designed "with the goal of maximizing survey completion rates and yielding the most reliable information for informing WMATA's business decisions."  (*Id.*)  The plan, questions, methodology, and information solicited for future research (page 29 of the survey document) "may be reused (and/or refined) depending on many

3

variables," the decision further explained.  (*Id.*)  "Therefore, WMATA does not publicize the[

survey] questions in order to protect the integrity of the deliberative process and the resulting

data."  (*Id.* at 1-2).

11.     The March 27 decision informed Unsuck that WMATA spent 5.5 hours processing

the PARP request for the customer satisfaction survey, waived the fees for the first two hours,

and that the processing fees for the remaining 3.5 hours were $324.17.  (*Id.* at 2)  The decision

also informed Unsuck that its two pending PARP requests would not be processed until the

processing fees incurred in connection with its request for the survey were paid.  (*Id.*)

12.     Also on March 27, Unsuck appealed with an email stating "LOL.  I re-appeal for

an unredacted version" and a second email stating "I appeal."  (Attach. G)

13.     April 5, 2019, WMATA's administrative appeal panel affirmed the March 27

decision for the reasons stated in the March 27 decision.  (Attach. H)

14.     WMATA conducts a customer satisfaction survey each quarter as part of the

process by which it makes decisions about WMATA policy and improvements to its service and

business operations.  The survey is a key metric to understanding whether WMATA is deploying

its resources effectively.  It informs WMATA's Executive Management Team as to a multitude of

WMATA decisions, including scheduling, fare changes and customer service training.  The

Executive Management Team includes General Manager and Chief Executive Officer Paul J.

Wiedefeld and WMATA's Chief Operating Officer, Chief Financial Officer, Senior Vice

Presidents for Bus and Rail, and Executive Vice President for Planning and Capital Projects.  The

Superintendents of WMATA's divisions, including its bus and rail divisions, as well as the Metro

Transit Police Department also use the survey in making decisions about improvements in their

components.

15.     The customer satisfaction survey was crafted by WMATA and its contractor, market research expert and survey consultant Morpace.  WMATA selected Morpace through its competitive procurement procedure based on Morpace's expertise in survey design and conducting.  Both survey design and conducting of the survey are scientific processes involving strategic determinations about structure—for example, the order of questions and when a survey allows the respondent to skip a question—as well as respondent outreach and sampling methodology.

16.     Morpace created the customer satisfaction survey using its scientific process for survey design in conjunction with WMATA, primarily through WMATA's Director of Customer Research who reports to me.  The survey thus constitutes the work product of Morpace and WMATA.  As WMATA paid for the survey, it is also WMATA's intellectual property.

17.     WMATA has instructed Morpace to keep the customer satisfaction survey confidential to protect the integrity of the survey.  Consistent with that instruction, Morpace conducts the survey by telephone and online via a closed link that is transmitted to a respondent by email.  These methods minimize the risk of the survey questions becoming publicly known.

18.     WMATA asks the same questions each time it conducts the customer satisfaction survey so that the responses will serve as a benchmark of performance against which future performance (assessed through subsequent surveys) can be readily measured.  Tracking changes in survey responses provides WMATA with trend data over time.  Trend data is critical because WMATA analyzes trends in performance to identify and assess the status of its operations and to target areas for possible improvements.

19.     This methodology is part of WMATA's deliberative process for identifying areas of its service and operations to target for improvements.  As explained in the January 18

decision, WMATA allocates particular weights to responses to survey questions to determine key actions to take to improve its performance. The select results that WMATA publicizes are the outcome of that weighted analysis.

20.     If the customer satisfaction survey questions were to become publicly known, survey respondents would be able to access, think about, and discuss the questions in advance of responding to the survey, and thereby skew the survey results. Additionally, third parties could seek to skew survey responses through sabotage, and thereby undermine the integrity of the survey and the reliability of the results.

21.     Disclosing the survey questions would force WMATA to alter its deliberative process for identifying areas of its service and operations to target for improvements. If the survey questions were disclosed, the integrity of future surveys would be susceptible to sabotage, and WMATA would have to discontinue the survey and hire a consultant to develop new survey questions. If the new survey questions also were subject to disclosure, then WMATA would have to hire a consultant to develop new questions for every survey. Developing new questions for every survey would increase the cost of conducting the quarterly survey by $1 to $2 million each year.

22.     In addition to the substantial additional cost of altering the questions for each survey, WMATA would lose the value of the customer satisfaction survey as a ready benchmark and source of important trend data. The reduced value of the survey would likely lead WMATA to factor survey results into its deliberations differently than at present.

23.     Finally, WMATA conducts other surveys in addition to the customer satisfaction survey. If a mandated disclosure of the customer satisfaction survey questions were to operate as a precedent and require disclosure of the questions of WMATA's other surveys, WMATA would

have to develop new questions every time it conducts one of those surveys and incur substantial

costs in doing so.  And WMATA would lose part of the value of those surveys, just as it would if

the withheld customer satisfaction survey questions were disclosed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed this ___10___ day of June, 2019, in Washington, D.C.

_____
Lynn Bowersox

# ATTACHMENT A

**Noh, Richard D.**

| | |
|---|---|
| **From:** | Tapp, Elizabeth |
| **Sent:** | Friday, April 27, 2018 10:31 AM |
| **To:** | Tapp, Elizabeth |
| **Subject:** | PARP Request |

**From:** Unsuck DC Metro [mailto:unsuckdcmetro@yahoo.com]
**Sent:** Thursday, April 26, 2018 4:50 PM
**To:** PARP
**Subject:** PARP Request

Hello,

I would like a copy of the most recent customer satisfaction survey. I'd like to see the questions asked.

Thanks

# ATTACHMENT B

| | |
|---|---|
| **From:** | PARP |
| **To:** | "Unsuck DC Metro" |
| **Bcc:** | Noh, Richard D.; Stessel, Dan; Deutsch, Emily K.; Bowersox, Lynn |
| **Subject:** | PARP Request No. 18-0094 (WMATA Customer Satisfaction Survey) |
| **Date:** | Monday, May 14, 2018 10:06:00 AM |

Dear Sir/Madam:

This is an acknowledgment and final decision regarding your April 26, 2018, Public Access to Records Policy (PARP) request for Washington Metropolitan Area Transit Authority (WMATA) records. Specifically, you requested a copy of most recent customer satisfaction survey in order to see the questions asked.

Your request was processed pursuant to the PARP, which is available online at http://www.wmata.com/about/records.

**Decision**.

Pursuant to PARP Exemption 6.1.5 (deliberative process and self-evaluative privilege), WMATA denies your request for the customer satisfaction survey and questions asked. WMATA carefully crafts the survey questions to help it to obtain accurate information used in making decisions regarding operations and ridership. Therefore, WMATA does not publicize these questions in order to protect the integrity of the process and the resulting data.

**Appeal Rights**.

If you wish to appeal WMATA's decision, in accordance with PARP § 9.1, you may file a written appeal of the action with the Chief of External Relations, Barbara Richardson, within 30 business days of the date of this decision letter. Further details about our appeals process can be found on our website.


Sincerely,


Sonia Bacchus
Chief Counsel, Customer Service and
Regulatory Affairs
WMATA

This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information or information prepared in anticipation of litigation. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.

**From:** Unsuck DC Metro [mailto:unsuckdcmetro@yahoo.com]
**Sent:** Thursday, April 26, 2018 4:50 PM
**To:** PARP
**Subject:** PARP Request

Hello,

I would like a copy of the most recent customer satisfaction survey. I'd like to see the questions asked.

Thanks

**ATTACHMENT C**

**From:**      Tapp, Elizabeth
**To:**        Tapp, Elizabeth
**Subject:**   PARP Appeal
**Date:**      Tuesday, May 15, 2018 9:40:33 AM

---

**From:** Richardson, Barbara
**Sent:** Monday, May 14, 2018 4:46 PM
**To:** Unsuck DC Metro
**Subject:** RE: PARP Appeal

Your appeal has been received. We will respond after a review and further consideration of your request.

Sincerely,

Barbara Richardson

---

**From:** Unsuck DC Metro [mailto:unsuckdcmetro@yahoo.com]
**Sent:** Monday, May 14, 2018 3:45 PM
**To:** Richardson, Barbara <brichardson@wmata.com>
**Subject:** PARP Appeal

Dear Ms. Richardson,

Per Metro's denial of my request (pasted below), I would like to appeal this decision per section 9.

I also want to clarify that I am not interested in the "process" about how the questions were done. I'm merely interested in the final questions that Metro asked the public! I am also not interested in the answers given to Metro.

The results of these surveys is something Metro routinely cites and is covered by the press. The public has an interest in learning what questions Metro is asking THE PUBLIC, which pays all Metro salaries.

Thank you.

Dear Sir/Madam:

This is an acknowledgment and final decision regarding your April 26, 2018, Public Access to Records Policy (PARP) request for Washington Metropolitan Area Transit Authority (WMATA) records.  Specifically, you requested a copy of most recent customer satisfaction survey in order to see the questions asked.

Your request was processed pursuant to the PARP, which is available online at http://www.wmata.com/about/records.

**Decision**.

Pursuant to PARP Exemption 6.1.5 (deliberative process and self-evaluative privilege), WMATA denies your request for the customer satisfaction survey and questions asked.

WMATA carefully crafts the survey questions to help it to obtain accurate information used in making decisions regarding operations and ridership.  Therefore, WMATA does not publicize these questions in order to protect the integrity of the process and the resulting data.

**Appeal Rights**.

If you wish to appeal WMATA's decision, in accordance with PARP § 9.1, you may file a written appeal of the action with the Chief of External Relations, Barbara Richardson, within 30 business days of the date of this decision letter.  Further details about our appeals process can be found on our website.


Sincerely,


Sonia Bacchus
Chief Counsel, Customer Service and
Regulatory Affairs
WMATA

This transmission is intended only for the proper recipient(s).  It is confidential and may contain attorney-client privileged information or information prepared in anticipation of litigation.  If you are not the proper recipient, please notify the sender immediately and delete this message.  Any unauthorized review, copying, or use of this message is prohibited.

# ATTACHMENT D



January 18, 2019

*Via E-mail:*  unsuckdcmetro@yahoo.com

Unsuck DC Metro

Re:  Appeal of PARP Request 18-0094 (WMATA Customer Satisfaction Survey)

To whom it may concern:

This is the Washington Metropolitan Area Transit Authority (WMATA)'s decision regarding your May 14, 2018 appeal of WMATA's denial of your request for the most recent customer satisfaction survey to see the questions asked.[1]

Pursuant to WMATA's Public Access to Records Policy (PARP),[2] your appeal was reviewed by an Appeal Panel composed of myself, Lynn Bowersox, Assistant General Manager of the Department of Customer Service, Communications, and Marketing, and Mark R. Pohl, Senior Counsel II.[3]

### I.  Background:

On April 26, 2018, you submitted your request for the most recent customer satisfaction survey.  You specifically stated that you wanted to see the questions asked.[4]

On May 14, 2018, WMATA issued a decision denying your request for the survey and questions asked, stating that the survey and questions asked were exempt under PARP § 6.1.5 (deliberative process privilege and self-evaluative privilege) because the questions had been carefully crafted to obtain accurate information used in making decisions regarding operations and ridership, which are not publicized in order to protect the integrity of the process and the resulting data.[5]

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

wmata.com

*A District of Columbia,
Maryland and Virginia
Transit Partnership*

---

[1] Your request was originally submitted on April 26, 2018.

[2] Detailed information regarding the PARP and a link to the policy are available on WMATA's website at https://www.wmata.com/about/records/.

[3] *See* PARP §§ 9.1, 9.1.3.  Senior Counsel Pohl was designated to serve as a panelist by WMATA's General Counsel.

[4] *See* April 26, 2018, PARP Request 18-0094 (Attachment 1).

[5] *See* May 14, 2018, Acknowledgment and Final Decision to PARP Request 18-0094 (Attachment 2).

*In re* Appeal of Denial of PARP Request 18-0094 (Customer Satisfaction Survey)
Page 2

On May 14, 2018, you submitted this appeal, and clarified that you are only seeking the questions asked.[6]

## II.    Decision:

The issue on appeal is whether WMATA erred in withholding the requested survey questions under PARP § 6.1.5. This PARP Exemption is patterned after Exemption 5 of the federal Freedom of Information Act (FOIA) and protects information/records that normally would be considered privileged in the context of civil discovery.[7] This exemption includes the internal deliberations of government personnel that are generated in advance of final agency decisions and are, therefore, protected from disclosure under the deliberative-process privilege.[8]

In *Jordan v. U.S. Dep't of Justice*, the United States Circuit Court of Appeals for the District of Columbia Circuit (D.C. Circuit) held that the deliberative-process privilege serves several policy purposes: (1) it protects creative debate and candid considerations of alternatives within an agency, and thereby improves the quality of agency decisions; (2) it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had been settled upon; and (3) it protects the integrity of the decision-making process itself by confirming that officials would be judged by what they decided, not for matters they considered before making a decision.[9]  While factual matters are generally releasable

---

[6] *See* May 14, 2018, Appeal of Denial of PARP Request 18-0094 (Attachment 3).

[7] WMATA is an interstate compact agency of the Commonwealth of Virginia, State of Maryland, and the District of Columbia, and not a federal agency. See Pub. L. No. 89–774, 80 Stat. 1324 (1966); Va. Code Ann. § 33.2–3100; Md. Code Ann., Transp. § 10–204; D.C. Code Ann. § 9–1107.01; see also *KiSKA Const. Corp.-U.S.A. v. WMATA,* 167 F.3d 608, 609 (D.C. Cir. 1999) ("Virginia, Maryland, and the District of Columbia [with Congress' authorization] created WMATA, by interstate compact, to plan, finance, develop, and operate a mass transit system to serve the Washington, D.C. metropolitan area."). Accordingly, WMATA is not subject to the federal FOIA. See *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 224 (D.C. Cir. 2013) (quoting 5 U.S.C. § 552(f)(1)) (holding that the federal FOIA defines an "agency" as any "establishment in the executive branch of the [federal] Government"). Nevertheless, PARP § 6.1.5 is patterned after Exemption 5 of the FOIA and protects information that normally would be considered privileged in the context of civil discovery. See *Department of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001) (holding that Exemption 5 protects documents that fall within recognized "privilege[s] against discovery under judicial standards that would govern litigation against the agency that holds it").

[8] See *Pub. Citizen Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (holding that, to warrant protection under Exemption 5, a document must be both pre-decisional (generated before the adoption of an agency policy) and deliberative (reflecting the give-and-take of the consultative process)) (internal citations omitted).

[9] 591 F.2d 753, 771-73 (D.C. Cir. 1978) (internal citations omitted).

*In re* Appeal of Denial of PARP Request 18-0094 (Customer Satisfaction Survey)
Page 3

under this privilege, the true determination of whether the privilege applies is the role the data plays in the administrative process.[10]

In your appeal, you stated that that results of the survey are routinely cited and covered by the press.  You added that since the questions are asked to the public, the public has a right to see the questions being asked since the public "pays all Metro salaries".[11]

Survey Respondents Are Functioning as Advisors.

Despite your appeal stating that survey questions are posed to the public, and therefore, there is a public interest in learning the questions, we note that the opinions and feedback of survey respondents are evaluated and incorporated into WMATA policy.   Specifically, the carefully crafted survey questions elicited responses that were compiled, reviewed, and organized by WMATA, who then allocated specific weights to responses to assess satisfaction metrics used by WMATA decision makers in finalizing the agency's actions designed to improve performance and customer satisfaction.  Accordingly, the survey respondents are acting as advisors to WMATA decision makers in this regard.[12]

The Customer Satisfaction Survey Is Part of WMATA's Deliberative Process.

As explained above, WMATA's customer satisfaction survey is designed to obtain accurate information used in making decisions regarding actions and improvements, and survey trends are tracked and analyzed over time.  WMATA does not publicize these questions (or the responses) to protect the integrity of the survey process and because publication would allow ill-intended persons to provide effective misinformation in response to the surveys, which could skew the results and analyses in ways that undermine WMATA operations and business processes.

We note that while survey questions may seem factual in nature, the distinction between deliberative and factual materials can become less clear where the facts themselves reflect the agency's deliberative process. Indeed, in *Wolfe v. HHS*, the D.C. Circuit observed that the fact/opinion test, while offering "a quick, clear and predictable rule of decision," is not infallible and must not be applied mechanically." [13] Therefore, the survey questions at issue in this appeal must be examined in light of

---

[10] *Coastal States Gas Corp. v. Dep't of Energy ("Coastal States"),* 617 F.2d 854, 867 (D.C. Cir. 1980).

[11] *See* Attachment 3.

[12] See *Times Journal Co. v. Department of Air Force,* 793 F.Supp.1, 4 (D.C. Cir. 1991) (holding that, when opinions of survey respondents are incorporated into Department policy, survey respondents are acting as policy advisors, and therefore, are part of the decision-making process.
[13] 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc).

*In re* Appeal of Denial of PARP Request 18-0094 (Customer Satisfaction Survey)
Page 4

the policies and goals that underlie the deliberative process privilege and in the context in which the materials are used.

For example, in *Montrose Chemical Corp. v. Train*, the D.C. Circuit held that summaries of public testimony compiled to facilitate an agency's decision were part of its internal deliberative process, and that the act of separating significant from insignificant facts constituted an exercise of judgment by agency personnel.[14]

Similarly, in *Mapother v. Dep't of Justice*, the D.C. Circuit found that the deliberative-process privilege shielded factual information prepared to support an Attorney General decision on a particular policy matter, holding:

> Like the information requested in *Montrose Chemical*, the majority of the factual material was assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action.[15]

These two cases support WMATA's position that the survey questions that you requested are generally part of WMATA's deliberative process. Rather than consisting of random facts, the survey questions were carefully crafted by WMATA personnel/consultants and aimed at obtaining specific information from the riding public regarding demographic data, motivators of customer satisfaction, and improvement actions. In fact, as with the information in *Montrose Chemical* and *Mapother,* the carefully crafted survey questions generate responses that were compiled, reviewed, and organized by WMATA personnel, who then allocated specific weights to responses to determine satisfaction percentages and key actions to improve performance. Therefore, while some results (such as overall satisfaction percentage) may be shared by WMATA,[16] the publicized results are the outcome of weighted analysis and calculations, and not merely question by question answers. WMATA does not release the questions or responses to these types of surveys to the general public because releasing this raw data would allow third parties to second-guess agency decision makers by, for example, revisiting the questions asked or the weight given to various responses, and could allow third parties who wish to thwart the process in the future, to devise means of skewing future survey results. As such, while the survey questions may appear to be merely factual to you, they are a part of WMATA's deliberative process.

---

[14] 491 F.2d 63, 68 (D.C. Cir. 1974).

[15] 3 F.3d 1533, 1539 (D.C. Cir. 1993).

[16] For example, WMATA's Vital Signs Report publish customer satisfaction percentages (divided by bus and rail), which are calculated based on analyzing numerous survey question responses, which are assigned specific weights.

*In re* Appeal of Denial of PARP Request 18-0094 (Customer Satisfaction Survey)
Page 5

The Appeal Panel acknowledges that, more recently, in *Hardy v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, a lower court held, among other things, that an agency provided insufficient justifications to show that survey-related documents fell within the domain of deliberative process privilege.[17]  Similarly, the Panel finds that WMATA failed to identify why all the withheld survey questions impact pre-decisional deliberations. The Panel acknowledges, and largely agrees with, WMATA's assertion that public knowledge of the questions could be used to second-guess WMATA's final decisions and enable third parties to skew future survey results.  However, as the Panel is aware that the questions cover topics including demographics in addition to satisfaction and performance related matters, it is not convinced that all the questions should be similarly withheld. Specifically, the Panel is unable to conclusively determine that releasing the demographic questions (such as age) could be used to second-guess WMATA's final decisions or enable third parties to skew future survey results.  However, the Panel notes that it is possible this information "inextricably intertwined with the deliberative sections [such] that disclosure would inevitably reveal [WMATA's] internal deliberations."[18]

Finally, while mindful that the deliberative-process privilege is not absolute, and must be balanced against the general public interest in disclosure, the Appeal Panel notes that, in this instance, the overall result of the Customer Satisfaction Survey – customer satisfaction – is published in WMATA's Quarterly Vital Signs Report. Therefore, while you explain that the public has an interest in this information, the public at large already has the high-level results that are of public interest, which is the purpose of the PARP.  Accordingly, there is no general basis to automatically release the requested information to you. [19]

## Conclusion:

---

[17] 243 F.Supp.3d 155, 174-76 (D.D.C. 2017).

[18] See *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 47 (D.D.C. 2012) (holding that "even 'purely' factual," or otherwise nonexempt "information is protected by [the Exemption 5] deliberative process privilege when it 'is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.'") (quoting *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Homeland Sec.*, 514 F.Supp.2d 36, 46 (D.D.C.2007) and *Judicial Watch, Inc. v. Dep't of Treasury*, 796 F.Supp.2d 13, 27–28 (D.D.C.2011)).

[19] The core purpose of the PARP is to advance popular understanding of "the operations or activities of the government" that concern the general public. See *U.S. Dept. of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 114 S. Ct. 1006, 127 L. Ed. 2d 325, 145 L.R.R.M. (BNA) 2513, 22 Media L. Rep. (BNA) 1417 (1994); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 160 (2004 (recognizing "[t]he well-known maxim . . . that 'release to one is release to all'" under the federal FOIA, upon which the PARP is based) (internal citations omitted). See also *id.* at 171(noting that the FOIA is often explained as a means for citizens to know "'what their Government is up to'") (internal citations omitted).

*In re* Appeal of Denial of PARP Request 18-0094 (Customer Satisfaction Survey)
Page 6

For the foregoing reasons, while the Panel generally upholds WMATA's use of the deliberative process privilege pursuant to PARP § 6.1.5 to withhold the survey questions, the Panel notes that WMATA has the burden of demonstrating that no reasonably segregable information exists within the document withheld. That burden has not been met here. We therefore reverse WMATA's decision and remand for an express finding of segregability, particularly to determine if there are demographic questions (age, gender, etc.) that can be segregated and released.

In accordance with PARP § 9.3, you may appeal this decision by seeking injunctive or declaratory relief in any state or federal court in the District of Columbia, Maryland or Virginia. For further details, please see the provisions of the PARP regarding judicial review at https://www.wmata.com/about/records/.[20]

Sincerely,

Barbara Richardson
Chief, External Relations

Attachments:

Attachment 1: April 26, 2018, PARP Request 18-0094

Attachment 2: May 14, 2018, Acknowledgment and Final Decision to PARP Request 18-0094

Attachment 3: May 14, 2018, Appeal of Denial of PARP Request 18-0094

---

[20] This is a required notice and is not intended as legal advice.

# ATTACHMENT E

| From: | Bacchus, Sonia A. |
|---|---|
| To: | "unsuckdcmetro@yahoo.com" |
| Cc: | Noh, Richard D. |
| Bcc: | Bowersox, Lynn; Stessel, Daniel; Richardson, Barbara; Lee, Patricia Y.; Yau, Raymond |
| Subject: | PARP Request No. 18-8094 (Remanded) (customer satisfaction survey) |
| Date: | Wednesday, March 27, 2019 11:03:00 AM |
| Attachments: | Customer Satisfaction Survey_Redacted.pdf |

Dear Sir/Madam:

This is the Washington Metropolitan Area Transit Authority's (WMATA) final decision regarding your April 26, 2018, Public Access to Records Policy (PARP) request for Washington Metropolitan Area Transit Authority (WMATA) records. Specifically, you requested a copy of the most recent customer satisfaction survey in order to see the questions asked.

On May 14, 2018, WMATA issued a decision denying your request for the survey and questions asked, stating that the survey and questions asked were exempt under PARP § 6.1.5 (deliberative process privilege and self-evaluative privilege).

On May 14, 2018, you appealed WMATA's decision.

On appeal, the Appeal Panel generally upheld WMATA's decision, but remanded the request with direction that WMATA review the survey to determine whether there are any parts (e.g., demographic questions) that could be segregated and released.

**Decision**

Upon further review, WMATA has identified portions of the survey (pages 27-28) that can be partially released.  However, pursuant to PARP Exemptions 6.1.4 (confidential information information) and 6.1.5 (deliberative process privilege) the remaining portions are withheld.

Attached please find the Customer Service Survey (29 pages total).

Pursuant to PARP Exemption 6.1.5 (deliberative process) and PARP Exemption 6.1.4 (confidential business information), WMATA has redacted the survey sampling plan and screening questions (pages 1-4) which WMATA and its contractor developed to ensure that there is sufficient representation of respondents for all geographical areas within its service region.  Similarly, WMATA and/or its contractor crafted the substantive survey questions (pages 5-27), which also provide instruction to the phone interviewers on how to proceed depending upon answers received (methodology), with the goal of maximizing survey completion rates and yielding the most reliable information for informing WMATA's business decisions. The survey sampling plan, questions, and methodology are not only protected by PARP Exemption 6.1.5 (deliberative process) but are also protected by PARP Exemption 6.1.4 (confidential business information) to the degree that some of the survey may reveal the contractor's business processes.  Finally, the plan, questions, methodology, and information solicited for future research (page 29) are also protected from disclosure pursuant to the qualified commercial privilege of PARP Exemption 6.1.5 because the plan, survey questions, methodology, and information regarding future research may be reused (and/or refined) depending on many variables.  Therefore, WMATA does not publicize

these questions in order to protect the integrity of the deliberative process and the resulting data.

## Fees

The PARP provides for the assessment of fees associated with requests that require more than 2 hours of staff time to process.  The fees are calculated at the employees' basic rate of pay, plus an additional 50 percent to cover benefits for the time spent responding to a request.

WMATA spent 5.5 hours processing this request.[1]   After waiving the fees associated with the first two hours, the processing fees for the remaining 3.5 hours are $324.17.

**Accordingly, please submit a certified check or money order in the amount of $324.17, made payable to the Washington Metropolitan Area Transit Authority, by no later than May 8, 2019. Please ensure the check is sent to the attention of Richard Noh, PARP/Privacy Policy Paralegal, and references PARP Request #18-8094**.  Please send the check to:

WMATA
Office of General Counsel, Second Floor
600 Fifth Street, NW
Washington, DC 20001
ATTN: Richard Noh, PARP/Privacy Paralegal.

**WMATA will not process any pending or future requests from unsuckdcmetro until we receive full payment.**[2]

## Appeal Rights.

If you wish to appeal WMATA's decision, in accordance with WMATA's PARP § 9.1, you may file a written appeal of the action with the Chief of External Relations, Barbara Richardson, at brichardson@wmata.com within 30 business days of the date of this letter. Further details about our appeals process can be found on our website.

Sincerely,

Sonia A. Bacchus
Senior Counsel, II
WMATA

[1] This does not include any time spent on the appeal or the original request.

2  Currently, unsuckdcmetro has two pending requests: (1) PARP Request No. 19-0003 for correspondence on WMATA's new bike policy and (2) PARP Request No. 19-0096 for the name of the company awarded the virtual station tours contract.

This transmission is intended only for the proper recipient(s).  It is confidential and may contain attorney-client privileged information or information prepared in anticipation of litigation.  If you are not the proper recipient, please notify the sender immediately and delete this message.  Any unauthorized review, copying, or use of this message is prohibited.

---

[1] This does not any time spent on the appeal or the original request.

[2] Currently, unsuckdcmetro has two pending requests: (1) PARP Request No. 19-0003 for correspondence on WMATA's new bike policy and PARP Request No. 19-0096 fro the name of the company awarded the virtual station tours contract.

# ATTACHMENT F

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
### CUSTOMER SATISFACTION TRACKING STUDY

PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

**BUS_RAIL. Survey Type –**
PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

**DATABASE. Database Type**
PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

## INTRODUCTION

PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

## SCREENING AND VERIFICATION

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE
CY2018 Q4

QUESTIONNAIRE

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE
QUESTIONNAIRE
CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

QUESTIONNAIRE

CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

QUESTIONNAIRE

CY2018 Q4

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4



PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

# PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

CY2018 Q4

PARP Ex. 6.1.5, PARP Ex. 6.1.4



WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

QUESTIONNAIRE

PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

What is the total number of people in your household, including yourself?

PARP Ex. 6.1.5, PARP Ex. 6.1.4

PARP Ex. 6.1.5, PARP Ex. 6.1.4

 Which of the following best describes your age category?

18-24
25-29



September 2018
M190436

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

*QUESTIONNAIRE*

CY2018 Q4

30-34
35-44
45-54
55-64
65+
Prefer not to answer

Do you consider yourself to be Spanish/Hispanic/Latino?

Yes
No
Prefer not to answer

D5.   Which one of the following best describes your race?

White/Caucasian
Black/African American
Asian
Pacific Islander
Native American
Other
Prefer not to answer

Which of the following ranges contains your annual household income (before taxes)?

Less than $10,000
$10,000 to less than $15,000
$15,000 to less than $25,000
$25,000 to less than $35,000
$35,000 to less than $50,000
$50,000 to less than $75,000
$75,000 to less than $100,000
$100,000 to less than $150,000
$150,000 to less than $200,000
$200,000 or more
Prefer not to answer

Are you...?
Male
Female
Prefer not to answer



- 28 -

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FINAL CUSTOMER SATISFACTION MEASUREMENT SURVEY – PHONE

QUESTIONNAIRE

CY2018 Q4
**FUTURE RESEARCH**

# PARP Ex. 6.1.5



# ATTACHMENT G

**Tapp, Elizabeth**

| | |
|---|---|
| **From:** | Tapp, Elizabeth |
| **Sent:** | Thursday, March 28, 2019 1:26 PM |
| **To:** | PARP |
| **Subject:** | PARP Request No. 18-8094 (Remanded) (customer satisfaction survey) |
| | |
| **Categories:** | OPENED |

**From:** Unsuck DC Metro <unsuckdcmetro@yahoo.com>
**Sent:** Wednesday, March 27, 2019 11:25 AM
**To:** Richardson, Barbara <brichardson@wmata.com>
**Subject:** <External>Fw: PARP Request No. 18-8094 (Remanded) (customer satisfaction survey)

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and have verified the authenticity of the message.

I appeal.

----- Forwarded Message -----
**From:** Unsuck DC Metro <unsuckdcmetro@yahoo.com>
**To:** Bacchus, Sonia A. <SBacchus@wmata.com>
**Sent:** Wednesday, March 27, 2019, 11:16:53 AM EDT
**Subject:** Re: PARP Request No. 18-8094 (Remanded) (customer satisfaction survey)

LOL.

I re-appeal for an unredacted version.

On Wednesday, March 27, 2019, 11:03:58 AM EDT, Bacchus, Sonia A. <SBacchus@wmata.com> wrote:

Dear Sir/Madam:

This is the Washington Metropolitan Area Transit Authority's (WMATA) final decision regarding your April 26, 2018, Public Access to Records Policy (PARP) request for Washington Metropolitan Area Transit Authority (WMATA) records. Specifically, you requested a copy of the most recent customer satisfaction survey in order to see the questions asked.

On May 14, 2018, WMATA issued a decision denying your request for the survey and questions asked, stating that the survey and questions asked were exempt under PARP § 6.1.5 (deliberative process privilege and self-evaluative privilege).

On May 14, 2018, you appealed WMATA's decision.

1

On appeal, the Appeal Panel generally upheld WMATA's decision, but remanded the request with direction that WMATA review the survey to determine whether there are any parts (e.g., demographic questions) that could be segregated and released.

**Decision**

Upon further review, WMATA has identified portions of the survey (pages 27-28) that can be partially released.  However, pursuant to PARP Exemptions 6.1.4 (confidential information information) and 6.1.5 (deliberative process privilege) the remaining portions are withheld.

Attached please find the Customer Service Survey (29 pages total).

Pursuant to PARP Exemption 6.1.5 (deliberative process) and PARP Exemption 6.1.4 (confidential business information), WMATA has redacted the survey sampling plan and screening questions (pages 1-4) which WMATA and its contractor developed to ensure that there is sufficient representation of respondents for all geographical areas within its service region.  Similarly, WMATA and/or its contractor crafted the substantive survey questions (pages 5-27), which also provide instruction to the phone interviewers on how to proceed depending upon answers received (methodology), with the goal of maximizing survey completion rates and yielding the most reliable information for informing WMATA's business decisions. The survey sampling plan, questions, and methodology are not only protected by PARP Exemption 6.1.5 (deliberative process) but are also protected by PARP Exemption 6.1.4 (confidential business information) to the degree that some of the survey may reveal the contractor's business processes.  Finally, the plan, questions, methodology, and information solicited for future research (page 29) are also protected from disclosure pursuant to the qualified commercial privilege of PARP Exemption 6.1.5 because the plan, survey questions, methodology, and information regarding future research may be reused (and/or refined) depending on many variables.  Therefore, WMATA does not publicize these questions in order to protect the integrity of the deliberative process and the resulting data.

**Fees**

The PARP provides for the assessment of fees associated with requests that require more than 2 hours of staff time to process.  The fees are calculated at the employees' basic rate of pay, plus an additional 50 percent to cover benefits for the time spent responding to a request.

WMATA spent 5.5 hours processing this request.[1]  After waiving the fees associated with the first two hours, the processing fees for the remaining 3.5 hours are $324.17.

**Accordingly, please submit a certified check or money order in the amount of $324.17, made payable to the Washington Metropolitan Area Transit Authority, by no later than May 8, 2019. Please ensure the check is sent to the attention of Richard Noh, PARP/Privacy Policy Paralegal, and references PARP Request #18-8094**.  Please send the check to:

WMATA

Office of General Counsel, Second Floor

600 Fifth Street, NW

Washington, DC 20001

ATTN: Richard Noh, PARP/Privacy Paralegal.


**WMATA will not process any pending or future requests from unsuckdecmetro until we receive full payment.**[2]


**Appeal Rights**.


If you wish to appeal WMATA's decision, in accordance with WMATA's PARP § 9.1, you may file a written appeal of the action with the Chief of External Relations, Barbara Richardson, at brichardson@wmata.com within 30 business days of the date of this letter.  Further details about our appeals process can be found on our website.


Sincerely,


Sonia A. Bacchus

Senior Counsel, II

WMATA


[1] This does not include any time spent on the appeal or the original request.

2  Currently, unsuckdcmetro has two pending requests: (1) PARP Request No. 19-0003 for correspondence on WMATA's new bike policy and (2) PARP Request No. 19-0096 for the name of the company awarded the virtual station tours contract.


This transmission is intended only for the proper recipient(s).  It is confidential and may contain attorney-client privileged information or information prepared in anticipation of litigation.  If you are not the proper recipient, please notify the sender immediately and delete this message.  Any unauthorized review, copying, or use of this message is prohibited.

---

[1] This does not any time spent on the appeal or the original request.


[2] Currently, unsuckdcmetro has two pending requests: (1) PARP Request No. 19-0003 for correspondence on WMATA's new bike policy and PARP Request No. 19-0096 fro the name of the company awarded the virtual station tours contract.

# ATTACHMENT H



April 5, 2019

*Via: email: unsuckdcmetro@yahoo.com*

Re: Public Access to Records Policy (PARP) 18-9094-2; Appeal of Decision
     Regarding Redacted Customer Satisfaction Survey

On March 27, 2019, the Washington Metropolitan Area Transit Authority (WMATA)
received your appeal of its decision, issued on the same day, regarding your request for
WMATA's Customer Satisfaction Survey.

Pursuant to WMATA's PARP, your appeal was reviewed by an Appeal Panel
composed of myself, Lynn Bowersox, Assistant General Manager of Customer
Service, Communications, and Marketing, and Mark R. Pohl, Senior Counsel II.[1]

The Appeal Panel considered your appeal, and affirms WMATA's decision below, for
the same reasons stated in that decision.

In accordance with PARP § 9.3, you may appeal this decision by seeking injunctive or
declaratory relief in any state or federal court in the District of Columbia, Maryland or
Virginia.  For further details, please see the provisions of the PARP regarding judicial
review at https://www.wmata.com/about/records/.[2]

Sincerely,

*Barbara Richardson*

Barbara Richardson
Chief of External Relations

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

wmata.com

*A District of Columbia,
Maryland and Virginia
Transit Partnership*

---

[1] *See* PARP §§ 9.1, 9.1.3.  Senior Counsel II Pohl was designated to serve as a panelist on behalf of
WMATA's General Counsel.

[2] This is a required notice and is not intended as legal advice.