UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNSUCK DC METRO,<br><br>*Plaintiff*,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.,<br><br>*Defendants*. | Civil Action No. 1:19-cv-01242 (CJN) |

## MEMORANDUM OPINION

Plaintiff Unsuck DC Metro claims that Washington Metropolitan Area Transit Authority (WMATA) has failed to comply with WMATA's Public Access to Records Policy ("PARP") and must disclose its customer satisfaction survey. *See generally* Compl., ECF No. 1. WMATA has moved to dismiss or, in the alternative, for summary judgment. *See generally* Defs.' Mot. to Dismiss or, in the Alt., for Summ. J. ("Defs.' Mot."), ECF No. 8. For the reasons that follow, the Court dismisses certain claims and grants summary judgment in favor of WMATA on the others.

### I.     Background

#### A.     WMATA & PARP

WMATA was founded in 1967 after Congress approved the interstate transit authority compact between the District of Columbia, Maryland, and Virginia ("WMATA Compact"). *See generally* D.C. Code § 9-1107.01; Md. Code Ann. Transp. § 10-204; Va. Code Ann. § 33.2-3100. In 2000, WMATA first adopted PARP, making certain public records available for public inspection. *See* PARP § 12.0.

The current version of PARP requires WMATA to "interpret and apply [it] consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal practice,

1

including when determining whether to waive exemptions." *Id.* § 1.0.  And it "make[s] official public records, including electronic records, available to the public for inspection and copying to the greatest extent possible unless exempted from disclosure by a provision" within the policy. *Id.*  "All records received or generated by WMATA, its officers, employees[,] and agents in and through the regular course of WMATA's business, and in WMATA's control at the time of the response . . . unless such records are published and are offered for sale by WMATA" are within PARP's scope.  *Id.* § 3.0.

### B. This Case

Unsuck is an unincorporated association that "raise[s] awareness of and educate[s] [Washington, D.C.-area] residents and visitors about the operations of [WMATA]."  Compl. ¶ 4.  In aid of that mission, Unsuck has previously requested and published records from WMATA. *Id.*

In April 2018, Unsuck requested a copy of WMATA's most recent customer satisfaction survey.  *Id.* ¶ 10.  WMATA conducts customer satisfaction surveys each quarter to help it decide if it should make improvements to its services and business operations.  Decl. of Lynn Bowersox ("Bowersox Decl.") ¶ 14, ECF No. 8-1.  According to WMATA, the survey is a "key metric to understanding whether [it] is deploying its resources effectively," and WMATA's Executive Management Team uses the survey to inform "a multitude of WMATA decisions, including scheduling, fare changes[,] and customer service training."  *Id.*  WMATA developed the survey with its contractor, Morpace.  *See id.* ¶ 16.  Morpace asks the same questions each time it conducts the survey, so WMATA can benchmark its performance by monitoring variances in the survey responses, and WMATA therefore instructs Morpace to keep the survey confidential.  *Id.* ¶¶ 17–18.  Morpace conducts the survey "by telephone and online via a closed link that is

transmitted to a respondent by email," which, in WMATA's view, "minimize[s] the risk of the survey questions becoming publicly known." *Id.* ¶ 17.

Following receipt of Unsuck's PARP request and associated administrative appeals, WMATA ultimately decided to redact all but one page of the survey on the ground that the redacted pages contacted information protected by the deliberative process privilege and confidential business information exemption. *See* Compl. ¶¶ 10–17.[1] Unsuck asserts that, by withholding the redacted information, WMATA has violated PARP (Count One), the Administrative Procedure Act (APA) (Count Two), the First Amendment (Count Three), and the common-law right of access to information (Count Four). *Id.* ¶¶ 18–42. For its part, WMATA argues that the Court lacks subject-matter jurisdiction over Unsuck's claims, that Unsuck fails to state a claim upon which relief can be granted, or alternatively, that WMATA is entitled to summary judgment on Unsuck's PARP claim. *See generally* Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. ("Defs.' Mem.") at 1, ECF No. 8 at 3.

## II.   Legal Standards

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of establishing a court's subject-matter jurisdiction over its asserted claims. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When evaluating a motion to dismiss under Rule 12(b)(1), the court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the

---

[1] Additionally, WMATA informed Unsuck that it owed $324.17 in processing fees and that if Unsuck did not pay that amount, WMATA would not process Unsuck's two pending requests or any of its future PARP requests. Compl. ¶ 15.

complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Without subject-matter jurisdiction over a claim, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006).

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences from those facts in the plaintiff's favor. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018).  The burden is on the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And a claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

A court may convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 if matters outside the pleadings are presented to the Court.  Fed. R. Civ. P. 12(d).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute about a material fact is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  After the moving party has met its burden, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial" to defeat the motion.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Though the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" its position, *Anderson*, 477 U.S. at 252.  In other words, "there must be evidence on which the jury could reasonably find for [the nonmoving party]."  *Id.*

### III. Analysis

#### A. Unsuck's Standing to Assert its PARP and Common-Law Claims

WMATA argues that Unsuck is an unincorporated association and thus lacks standing to assert its PARP and common-law claims.  Defs.' Mem. at 7–9.  An unincorporated association's capacity to sue is determined "by the law of the state where the court is located, except that" it may sue "to enforce a substantive right existing under the United States Constitution or laws."  Fed. R. Civ. P. 17(b)(3).  WMATA is correct that, under D.C. law, an unincorporated association generally does not have standing to sue.  *E.g.*, *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 91 (D.D.C. 2006) ("D.C. law does not permit an unincorporated association to sue or be sued directly." (citations omitted)).  An exception exists, however, for unincorporated *nonprofit* associations.  D.C. Code § 29-1109(a) ("An unincorporated nonprofit association shall have the capacity to sue and be sued in its own name.").  Under D.C. law, an unincorporated nonprofit association "means [1] an unincorporated organization, [2] consisting of 2 or more members joined under an agreement that is oral, in a record, or implied from conduct, [3] for one or more common, nonprofit purposes."  *Id.* § 29-1102(5).

The Parties disagree about whether Unsuck has adequately pleaded that it is a nonprofit.  Unsuck notes its allegations that "(1) it is an unincorporated association; (2) it consists of residents of D.C., Maryland, and Virginia; and (3) it seeks to raise awareness of and educate [Washington, D.C.-area] residents and visitors about the operations of Metro."  Pl.'s Mem. of P.

5

& A. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n") at 3–4 (citing Compl. ¶ 4), ECF No. 10.  WMATA, in turn, argues that Unsuck's "allegations, even construed liberally, do not plead that Unsuck is a *nonprofit* association."  Defs.' Reply Mem. in Supp. of Defs.' Mot. ("Defs.' Reply") at 2 (citing Compl. ¶ 4), ECF No. 11.

Construing the Complaint liberally, as the Court must at the motion-to-dismiss stage, the Court concludes that Unsuck has pleaded that it is a nonprofit, joined "for one or more common, nonprofit purposes."  D.C. Code § 29-1102(5).  Unsuck alleges that "[i]ts purpose is to raise awareness of and educate [Washington, D.C.-area] residents and visitors about the operations of Metro."  Compl. ¶ 4.  While the Complaint does not explicitly use the word "nonprofit," construed liberally, the Complaint describes a "common, nonprofit purpose[]," D.C. Code. § 29-1102(5)—namely, raising awareness and educating residents and visitors about Metro.

### B.     Eleventh Amendment Immunity

WMATA also argues that it enjoys sovereign immunity, which precludes Unsuck's APA and common-law claims.  Defs.' Mem. at 7.  "In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities."  *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citations omitted); *see also Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004); *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000).  WMATA thus enjoys Eleventh Amendment immunity unless WMATA has consented to suit (thereby waiving its immunity) or Congress has abrogated WMATA's immunity under section 5 of the Fourteenth Amendment.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Relying on *Elcon Enterprises, Inc. v. WMATA*, 977 F.2d 1472 (D.C. Cir. 1992), Unsuck argues that courts treat WMATA as a federal agency and thus state sovereign immunity under the Eleventh Amendment "simply does not apply."  Pl.'s Opp'n at 5.  The Court disagrees.  The

D.C. Circuit did not hold that WMATA was a federal agency in *Elcon*; instead, the court expressly stated that it was unnecessary to decide in that case whether WMATA is a federal agency. 977 F.2d at 205. Other courts have held that WMATA is *not* a federal agency. *E.g.*, *Seal & Co. v. WMATA*, 768 F. Supp. 1150, 1154 (E.D. Va. 1991) ("[T]he agency involved—WMATA—is not a *federal* agency. Rather, it is 'an instrumentality and agency of each of the signatory parties—the District of Columbia, Maryland, and Virginia.'" (quoting *WMATA v. One Parcel of Land*, 706 F.2d 1312, 1314 (4th Cir. 1983)). Unsuck makes no showing to the contrary.

Unsuck also argues that WMATA has consented to common-law suits because in PARP it "authorized aggrieved requesters to bring a civil action for injunctive relief or a declaratory judgment" and has "also authorized courts to enjoin WMATA from improperly withholding records and to order the production of them." Pl.'s Opp'n at 7 (citing PARP §§ 9.3.1, 9.3.3). Not so. In the provisions of PARP on which Unsuck relies, WMATA merely consented to suits bringing claims *under PARP*; those provisions do not reflect any consent to be sued for other claims, such as the common-law claims asserted here. PARP § 9.3.2 ("In accordance with section 81 of the WMATA Compact, an action *to enforce* [*PARP*] may be brought in any state or federal Court of the United States located in the District of Columbia, Maryland, or Virginia without regard to the amount in controversy." (emphasis added)).

### C.    Failure to State a First Amendment Claim

As for its First Amendment claim, Unsuck argues that a First Amendment right exists "to all information in which there is a willing speaker." Pl.'s Opp'n at 6 (citing *Gregg v. Barrett*, 771 F.2d 539, 547–49 (D.C. Cir. 1985)). And, in Unsuck's view, WMATA became a willing speaker when it established PARP, and its withholding of the customer satisfaction survey pursuant to that policy violates the First Amendment. *Id.*

7

Unsuck is correct that in certain circumstances a First Amendment right exists to receive information from a willing speaker whose speech is chilled by the government. *E.g.*, *Martin v. EPA*, 271 F. Supp. 2d 38, 47 (D.D.C. 2002) ("[A] cause of action exists under the First Amendment which allows a recipient to allege that government conduct has chilled the speech of a willing speaker." (citing *Taylor v. Res. Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995))). But here, the speaker is WMATA, and WMATA is certainly not willing, which it has made clear by denying Unsuck's PARP claim and through its briefs in this lawsuit.

### D.     Summary Judgment on the PARP Claim

Finally, WMATA moves for summary judgment on its withholding of the customer satisfaction survey. PARP Exemption 6.1.5 is modeled after FOIA Exemption 5. *Compare* PARP § 6.1.5 ("intra-agency and inter-agency (WMATA Compact signatories and political subdivisions and representatives) memoranda or letters which would not be made available by law to a party in litigation with WMATA"), *with* 5 U.S.C. § 552(b)(5) ("inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency").[2] This Exemption "incorporates the privileges that the Government may claim when litigating against a private party, including . . . the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citation omitted). "The [deliberative process] privilege protects 'documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). For a document to qualify for the privilege, it "must be both

---

[2] PARP is to be interpreted and applied "consistent with the federal Freedom of Information Act . . . and federal practice, including when determining whether to waive exemptions." PARP § 1; *see also* Defs.' Mem. at 13–14; Pl.'s Opp'n at 8–9.

pre-decisional and deliberative." *Id.* (citation omitted). "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987). And a document is deliberative if it is "a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). To meet its burden, an agency "must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Senate of P.R.*, 823 F.2d at 585–86 (quoting *Costal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

WMATA argues that "[d]isclosing the survey questions . . . would force [it] to alter its deliberative process." Defs.' Mem. at 15. In WMATA's view, "the withheld customer satisfaction survey questions 'shed light' on the facts that WMATA feels require development to inform its decisions about which areas of service and operations to target for improvements, as well as the manner in which WMATA goes about developing those facts." *Id.* at 15–16 (citation omitted). WMATA relies on the Declaration of Lynn Bowersox, its Senior Vice President for Customer Service, Communications, and Marketing, to "explain[] the importance of the customer satisfaction survey to WMATA's process for determining which service and operations improvements to make." *Id.* at 14 (citing Bowersox Decl. ¶¶ 14, 18–22).

Unsuck does not contest any of the facts in the Bowersox Declaration or WMATA's papers,[3] but instead argues that the customer survey questions "do not satisfy either element" of

---

[3] Unsuck does not contest any of WMATA's submitted material facts; instead, it states that the facts are either "[u]ndisputed" or that Unsuck "lacks knowledge to confirm or deny" a fact. Pl.'s Resp. to Defs.' Statement of Material Facts at 1–2, ECF No. 10-3. The Court therefore treats WMATA's Statement of Material Facts, Defs.' Statement of Material Facts, ECF No. 8 at 34, as admitted. LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the

the deliberative process privilege. Pl.'s Opp'n at 9. It notes that Bowersox "does not testify the questions themselves are used by a WMATA decisionmaker to decide which service and operations improvements to make," but that the survey helps to inform WMATA's Executive Management Team. *Id.* at 9–10 (citing Bowersox Decl. ¶ 14). And in Unsuck's view, the questions do not "recommend or express opinions on policy matters"; instead, "[t]hey are just questions that will be asked of customers." *Id.* at 10. Unsuck thus argues that, at most, "the analysis of the answers provided by those customers could possibly be the information that recommends or expresses opinions on policy matters." *Id.*

The Court agrees with WMATA that the customer satisfaction survey questions satisfy the deliberative process privilege because they are both predecisional and deliberative. To start, the customer satisfaction survey questions were prepared for the WMATA Executive Management Team in advance of decisions about "WMATA policy and improvements to its service and business operations," Bowersox Decl. ¶ 14, making them predecisional.[4] Unsuck's argument that WMATA has presented no evidence that "the questions themselves are used by a WMATA decisionmaker to decide which service and operations improvements to make," Pl.'s

---

motion."); *see also Floyd v. PNC Mortg.*, 216 F. Supp. 3d 63, 65–66 (D.D.C. 2016) ("The nonmoving party's opposition . . . must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." (citing Fed. R. Civ. P. 56(e); then citing *Celotex*, 477 U.S. at 324)); *Kornegay v. AT&T*, 579 F. Supp. 2d 34, 36 (D.D.C. 2008) (adopting the AT&T's statement of facts as undisputed because Kornegay's "statement d[id] not specifically contradict any facts set forth in AT&T's Statement of Undisputed Facts").

[4] WMATA's Executive Management Team "includes General Manager and Chief Executive Officer Paul J. Wiedefeld an WMATA's Chief Operating Officer, Chief Financial Officer, Senior Vice Presidents for Bus and Rail, and Executive Vice President for Planning and Capital Projects." Bowersox Decl. ¶ 14. "The Superintendents of WMATA's divisions, including its bus and rail divisions, as well as the Metro Transit Police Department also use the survey in making decisions about improvements in their components." *Id.*

Opp'n at 9, is incorrect. As Bowersox explains, the survey is shared with various executives, including Defendant and Chief Executive Officer Paul J. Wiedefeld, WMATA's Chief Operating Officer, and its Chief Financial Officer, among others, to make decisions about various aspects of WMATA policy. *See* Bowersox Decl. ¶ 14. Unsuck has not challenged Bowersox's assertions and has put forth no contrary evidence.

The surveys are also deliberative. Based on the uncontroverted facts, the survey questions "inform[] WMATA's Executive Management Team as to a multitude of WMATA decisions, including scheduling, fare changes[,] and customer service training." *Id.* And the questions are prepared, posed, and analyzed in such a way to help WMATA make its decisions. For example, "WMATA asks the same questions each time it conducts the customer satisfaction survey so that the responses will serve as a benchmark of performance against which future performance (assessed through subsequent surveys) can be readily measured." *Id.* ¶ 18. It then reviews the trends from these surveys "to identify and assess the status of its operations and to target areas for possible improvement." *Id.* In other words, the questions were "prepared in order to assist an agency decisionmaker in arriving at his decision." *Petrol. Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).

This case is similar to *Wadelton v. Department of State*, 106 F. Supp. 3d 139 (D.D.C. 2015), which addressed whether questionnaires sent by the Department of State's Office of the Inspector General ("OIG") to agency promotion board members were covered by the deliberative process privilege. *Id.* at 153–54. The court held that "[t]he questions posed are themselves predecisional and deliberative, as they shed light on which facts OIG felt required development and the manner in which OIG went about developing those facts." *Id.* at 154. The same is true

here.  As WMATA argues, its survey questions "'shed light' on which facts WMATA feels require development to inform its decisions about improvements in service and operations and the manner in which WMATA goes about developing those facts."  Defs.' Reply at 13.

To be sure, WMATA's questions are posed to certain members of the public, while the questionnaires at issue in *Wadelton* were sent to employees of an agency by the agency's inspector general as part of an internal investigation.  Pl.'s Opp'n at 10 (citing *Wadelton*, 106 F. Supp. 3d at 152–54).  But what makes the survey questions here deliberative is that the questions themselves, if released, would reveal critical aspects of WMATA's deliberative process—namely, its identification of these areas of its service and operations that it thinks might require improvement.  And to obtain the information WMATA seeks, it must survey certain members of the public.  Contrary to Unsuck's assertions, *see* Pl.'s Opp'n at 10–11, conducting a survey of a limited group of individuals is different from merely publishing the questions to the public, which would diminish the effectiveness of the survey itself.  For that reason, WMATA takes various measures to prevent the survey questions from becoming publicly known, including conducting the survey either by telephone or via a closed link sent to a respondent's email.  Bowersox Decl. ¶ 17.

Finally, the survey process as a whole is also likely protected by the deliberative process privilege.  Again, and as WMATA emphasizes, public disclosure of the survey questions would lessen their value because of the potential for the results of the survey to be skewed.  And public disclosure would prevent WMATA from using the survey questions as "a key metric to understanding whether WMATA is deploying its resources effectively."  *Id.* ¶ 14.  As such, the privilege prevents their release.  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir.

1993) ("[T]he privilege serves to protect the deliberative process itself, not merely documents containing deliberative material.").

The Court thus holds that the customer satisfaction survey is exempt from disclosure under the deliberative process privilege. For this reason, the Court does not reach WMATA's alternative arguments that the survey is exempt from disclosure under other PARP exemptions.[5]

## IV.    Conclusion

For the foregoing reasons, WMATA's Motion to Dismiss Unsuck's APA, common-law, and First Amendment claims is **GRANTED**, and its Motion for Summary Judgment on Unsuck's PARP claim is also **GRANTED**. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: May 21, 2020

CARL J. NICHOLS
United States District Judge

---

[5] In its Opposition, Unsuck made clear that it "no longer challenges Defendants' withholding of records responsive to [its] other two PARP requests. It only challenges [WMATA's] withholding of information contained within the 29-page September 2018 Customer Satisfaction Study." Pl.'s Opp'n at 2 n.1. The Court therefore enters summary judgment in WMATA's favor as to these other two requests. *See Anderson*, 477 U.S. at 257 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").