UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNSUCK DC METRO,<br><br>      *Plaintiff*,<br><br>  v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.,<br><br>      *Defendants*. | Civil Action No. 1:19-cv-01242 (CJN) |

## MEMORANDUM OPINION

Following oral argument in Plaintiff's appeal of the Order granting Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, *see* ECF Nos. 13, 14, the Court of Appeals remanded the record and directed this Court "to determine whether a cause of actions exists for [Plaintiff's] Public Access to Records Policy ("PARP") claim," and in particular "whether the Washington Metropolitan Area Transit Authority ("WMATA") Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966), or any relevant statute creates a cause of action, and whether WMATA has authority to provide for judicial review of its decision to deny a request for records pursuant to the PARP.  *See Alexander v. Sandoval*, 532 U.S. 276, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.")."  ECF No. 18.  As discussed below, WMATA has repeatedly and expressly waived any argument that no such cause of action exists, and since this question does not go to the Court's jurisdiction, the Court need not reach it before deciding other merits issues. But to address the Court of Appeals' mandate directly:  neither the Compact nor any other statute

1

directly creates a cause of action for Plaintiff, but there are several plausible alternative sources of a cause of action.

### I.      Background

#### A.      WMATA & PARP

WMATA was founded in 1967 after Congress "consent[ed] to, adopt[ed] and enact[ed]" an interstate transit authority compact among the District of Columbia, Maryland, and Virginia. Virginia, Maryland and District of Columbia, compact., Pub. L. No. 89-774, 80 Stat. 1324, 1324 (1966) (hereinafter "WMATA Compact"); *see generally* D.C. Code § 9-1107.01; Md. Code Ann. Transp. § 10-204; Va. Code Ann. § 33.2-3100.  The WMATA Compact grants jurisdiction to the federal district courts over "all actions" in which WMATA is a party.  *See* WMATA Compact, 80 Stat. 1324, 1350 ("The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against the Authority.").  The Compact also expressly recognizes that suits involving WMATA can be removed to federal court:  "Any such action [in which WMATA is a party] shall be removable to the appropriate United States District Court." *Id.*

In 2000, WMATA first adopted PARP, making certain public records available for public inspection. *See* PARP § 12.0.  The current version of PARP requires WMATA to "interpret and apply [it] consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal practice, including when determining whether to waive exemptions." *Id.* § 1.0.  And it "make[s] official public records, including electronic records, available to the public for inspection and copying to the greatest extent possible unless exempted from disclosure by a provision" within the policy. *Id.*  "All records received or generated by WMATA, its officers, employees[,] and agents in and through the regular course of WMATA's business, and in WMATA's control at the

time of the response . . . unless such records are published and are offered for sale by WMATA" are within PARP's scope.  *Id.* § 3.0.

PARP also includes a process for challenging the denial of a request for records.  In particular, Section 9 of PARP outlines the administrative appeal process for PARP requests. A "requester" may seek an administrative review of a denial by filing a written appeal to the Chief of Staff, and the appeal will be heard by a Panel consisting of the Chief of Staff, General Counsel, and the Assistant General Manager of the Official Custodian or their respective designees. *Id.* §§ 9.1.1, 9.1.3.  If the appeal is denied, PARP also provides for "the right to judicial review" after exhaustion of the administrative appeal process.  *Id.* § 9.1.5; *id.* § 9.2.1 ("A requester must exhaust the administrative appeal process, before seeking judicial review of a denial of request for records or a fee waiver.").  PARP then permits a "[r]equester" to "bring a civil action" for judicial review, *id.* § 9.2, but limits the remedies to injunctive relief or a declaratory judgment, *id.* § 9.3.1, explains when and where the action may be filed, § 9.3.2, and describes the available relief and the effect of certain findings, *id.* § 9.3.3–9.3.7.

### B. Prior Proceedings

In April 2018, Plaintiff Unsuck DC Metro requested a copy of WMATA's recent customer satisfaction survey.  Compl. ¶ 10.  After denials and administrative appeals, WMATA ultimately decided to redact all but one page of the survey.  *See* Compl. ¶¶ 10–17.  Unsuck then filed this suit.  In Count I of its Complaint, Unsuck asserted, *inter alia*, that Defendants had committed a "[V]iolation of PARP" by "unlawfully withholding most information contained within" the contested report.  Compl. ¶¶ 18–22, ECF No. 1.

As relevant here, in their Motion to Dismiss or, in the Alternative, for Summary Judgment, Defendants did not argue that PARP does not provide a cause of action.  Defendants' Motion to Dismiss at 10, ECF No. 8 ("Defs. Mot.").  Defendants did seek to dismiss Count I on the grounds

that as an unincorporated corporation Plaintiff lacked capacity to sue; and they also sought to dismiss Count I "insofar as it relies on the Declaratory Judgment Act" because, as is well-established, a declaratory judgment is a form of relief, not a cause of action. Defs. Mot. at 10; *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014) ("The Declaratory Judgment Act . . . does not provide a cause of action") (quotation omitted). As for Plaintiff's APA claim, Defendants argued that WMATA is not a federal agency subject to the APA, but in any event, even assuming WMATA were subject to the APA, the APA would be "inapplicable because the PARP supplies an adequate remedy for Unsuck." ECF No. 8 at 12; *see* 5 U.S.C. § 704 (providing that the APA applies to '[a]gency action made reviewable by statute and final agency action for which there is *no other adequate remedy in a court*.') (emphasis supplied)." Defendants also moved for summary judgment on Count I, contending that their withholding of the records was a proper application of the deliberative process privilege.

In response to Defendants' Motion, Plaintiff argued that "the cause of action in Count I is based on PARP." Pl. Resp. to Defs. Mot. at 3, 4. And in their reply brief, Defendants reiterated their argument that the APA is inapplicable here because "PARP provides an adequate remedy," and did not argue that PARP does not provide a cause of action. Defs. Reply at 7, 8–9.

At oral argument on Defendants' Motion, the Court sought to confirm that Defendants were not contesting the existence of a cause of action under PARP. In particular, the Court asked:

> So assuming they have capacity to sue on the PARP claim . . . .. am I right, *you don't have any other threshold arguments on the PARP claim*? And the PARP claim, [WMATA] concedes, can be brought by someone with capacity to sue. *There's a cause of action under PARP against WMATA*, there is subject matter jurisdiction for such a claim against [WMATA]. *And so the question—again, putting aside the capacity to sue—is the summary judgment argument about whether the documents are properly withheld under the PARP exemptions, correct*?

4

Tr. 5 (Jan 21, 2020) (emphases added). To which Defendants replied "Yes. That's right, Your Honor." *Id.*

The Court issued an Order dismissing Counts II–IV, and granting summary judgment to WMATA on Count I, Unsuck's PARP claim. Order of May 21, 2020, ECF No. 14. Plaintiff appealed that Order, and after oral argument, the Court of Appeals remanded the case, directing the Court to determine:

> [W]hether a cause of action exists for Unsuck DC Metro's Public Access to Records Policy ("PARP") claim. Specifically, the district court shall consider whether the Washington Metropolitan Area Transit Authority ("WMATA") Compact, Pub. L. No 89-774, 80 Stat. 1324 (1966), or any relevant statute creates a cause of action, and whether WMATA has authority to provide for judicial review of its decision to deny a request for records pursuant to the PARP. *See Alexander v. Sandoval*, 532 U.S. 276, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").

Order of the Court of Appeals, ECF No. 18. On remand, the Court instructed the Parties to submit supplemental briefing on those issues, as well as on "whether WMATA has waived the argument that no cause of action exists." ECF No. 18.

In its supplemental brief, Plaintiff argues that—notwithstanding its allegations in Count I of its Complaint and its prior briefing—that "[u]pon closer analysis, it does not appear that the WMATA Compact or any other statute creates a cause of action for Plaintiff's PARP claim." Pl. Supp. Br. at 2. For support, Plaintiff relies on a decision from another Judge of this Court that rejected the existence of a cause of action for violations of WMATA's procurement regulations. *See Schindler Elevator Corp. v. WMATA*, 514 F.Supp.3d 197, 207–12 (D.D.C. 2020), aff'd, 16 F.4th 294 (D.C. Cir. 2021). Plaintiff further argues that caselaw suggests WMATA cannot create a cause of action, citing *Alexander v. Sandoval*, 532 U.S. 275. 291 (2001). Plaintiff admits "WMATA did not raise any objection concerning the cause of action issue" but states that it is an

5

"open question" whether that is of significance because the objection that a complaint fails to state a claim may be raised until, though not beyond, a trial or decision on the merits. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006). Plaintiff suggests that the Court vacate its prior decision and allow Plaintiff to re-litigate its alternative claims because they are not precluded by PARP. Pl. Supp. Br. at 7.

For their part, Defendants' supplemental brief repeats their waiver of any argument that Plaintiff lacks a cause of action under PARP. In particular, Defendants' supplemental brief states their "affirmative recognition of the existence of a cause of action," as well as "WMATA's agreement to [the] availability [of a cause of action] at oral argument before this Court of Defendants' Rule 12 motion[.]" Defs. Supp. Br. at 10. Defendants contend that such a cause of action was not created directly by the Compact or any other statute, but instead argue that the Compact delegates to WMATA the authority to create a cause of action, and that WMATA did so through PARP. Defs. Supp. Br. at 5–6. Defendants also argue that, regardless of the outcome on Count I (Plaintiff's PARP claim), because Plaintiff did not raise on appeal any arguments about its other claims (Counts II–IV), Plaintiff should not be permitted to pursue those other claims even if no cause of action exists on its PARP claim. *Id.* at 10 n.7.

## II.   Analysis

### A.

In this Court's prior proceedings, neither party contested the existence of a cause of action for Plaintiff's PARP claim. Plaintiff, of course, asserted a PARP claim in Count I of its Complaint, Compl. ¶¶ 18–22, and argued in its briefs that it was asserting a cause of action under PARP. As for Defendants, they never argued that Plaintiff lacked a cause of action for its PARP claim; indeed, during oral argument on their motion they affirmatively waived that argument. *See supra* at 4–5. And even on remand, Defendants have expressly waived any argument that Plaintiff lacks a cause

6

of action to pursue its PARP claim. *See* Defendants' Supplemental Brief at 10, ECF No. 21 ("WMATA's affirmative recognition of the existence of a cause of action in this brief—and WMATA's agreement to its availability at oral argument . . . —may inform the Court's waiver analysis.").

At least under current doctrine, whether a cause of action exists is not a jurisdictional question. *Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979) (assuming the existence of an uncontested cause of action because "[t]he question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided."). In fact, the Court of Appeals has recognized that whether a plaintiff has a cause of action for its claim *against WMATA* is not a jurisdictional question. *See Elcon Enters., Inc. v.* WMATA, 977 F.2d 1472, 1479 n.2 (D.C. Cir. 1992) ("Because it is not a jurisdictional issue," the Court of Appeals "express[ed] no opinion on" whether plaintiffs "ha[d] an implied cause of action under the WMATA compact.") (citing *Bell v. Hood*, 327 U.S. 678, 681–82 (1946)). And the Court has subject-matter jurisdiction pursuant to the Compact, which grants original jurisdiction to the United States District Courts for "all actions brought by or against the Authority." 80 Stat. 1324, 1350; *see also Thompson v. Drug Enf't Admin.*, 492 F.3d 428, 432 (D.C. Cir. 2007) (interpreting "action" in another statute to refer to a case as a whole, not a particular cause of action).[1]

---

[1] Another Judge in this District has stated that "without a congressionally created cause of action that allows for the waiver of WMATA's sovereign immunity, this Court does not have jurisdiction to adjudicate claims against WMATA." *Schindler Elevator Corp. v. WMATA*, 514 F. Supp. 3d 197, 207 (D.D.C. 2020), aff'd, 16 F.4th 294 (D.C. Cir. 2021) (citing *Banneker Ventures v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015)). But that conclusion does not directly apply where, as here, WMATA appears to have waived any sovereign immunity it may have, both generally (by consenting to PARP suits) and specifically (by not raising this argument in this case). *See* Memorandum Opinion of May 21, 2020 at 6–7, ECF No. 13; *Beers v. State*, 61 U.S. 527, 529 (1857) (holding sovereign immunity "is altogether voluntary on the part of the sovereignty" such that "it follows that [the sovereign] may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted[.]"); *see also* Caleb Nelson,

WMATA has, of course, repeatedly and knowingly declined to argue that Plaintiff lacks a cause of action to pursue its PARP claims.  The Court therefore deems the issue waived.  But even if this argument could not be waived for some reason, the Court is not aware of a doctrine that would require it to decide one merits issue before another.  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (recognizing that "courts should have the discretion to decide" one merits issue before another "in particular cases").  That is, because the "question whether a cause of action exists . . . may be assumed without being decided," *Burks v. Lasker*, 441 U.S. 471, 476 (1979), the Court may decide the substance of Plaintiff's PARP claim before addressing whether a cause of action exists.  Doing so here conserves judicial resources because whether Plaintiff has a cause of action for his PARP claim is an exceedingly difficult issue that may ultimately depend on an unresolved issue of D.C. law.  And the Court has, of course, already decided that Defendants are entitled to summary judgment on their invocation of the deliberative process privilege under PARP.  *See* ECF Nos. 13, 14.[2]

---

*Sovereign Immunity As A Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559 (2002). Whether WMATA has the *authority* to waive any sovereign immunity it may have is another unclear and unbriefed question, *see* WMATA Compact § 80 (waiving sovereign immunity for only tort and contract claims), but given WMATA's apparent waiver here, the Court does not believe the issue needs to be addressed before reaching the merits.  *See Mowrer v. United States Dep't of Transportation*, 14 F.4th 723, 743 (D.C. Cir. 2021) (Randolph, J., concurring in part and concurring in the judgment) (concluding that sovereign immunity issues can be decided after the merits); *but see id.* at 733 (Katsas, J., concurring) (arguing that sovereign-immunity is jurisdictional and must be decided before the merits).

[2] In another case recently decided by the Court of Appeals, a party argued that state analogues to the APA may provide a cause of action for disputes involving WMATA.  *See* Pl. Br at 38, 2021 WL 1750314, *Schindler Elevator Corporation v. WMATA,* 16 F.4th 294 (D.C. Cir. 2021) (citing Virginia Administrative Process Act, Va. Code Ann. § 2.2-4027, 4029; Maryland Administrative Procedure Act, Md. Code Ann. § 10-222; District of Columbia Administrative Procedure Act, D.C. Code Ann. § 2-510.).  The Court of Appeals declined to address that argument because it was first raised in a reply brief before the district court.  *Schindler Elevator Corporation v. WMATA,* 16 F.4th at 305 n.3 (D.C. Cir. 2021) (citing *Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014).  The argument has been forfeited here too.

**B.**

The Court would therefore not normally attempt to resolve the question of whether Plaintiff has a cause of action under PARP, as it would not affect the outcome of this case and as it involves issues that are largely unexplored. But the Court of Appeals remanded this matter for the purpose of deciding that question.

The Court starts with *Alexander v. Sandoval.* In that case, a private party claimed that the Alabama Department of Public Safety's policy of administering its driver's license examination program in only English violated regulations issued by the U.S. Departments of Justice and Transportation pursuant to Title VI of the Civil Rights Act of 1964. The Court held that the statute did not contain a private right of action and that the agency's regulations could not create one. As the Court put it, "[l]anguage in a[n agency's] regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 276, 291 (2001). Although the Court did not explain the basis for this statement, it appears to be grounded on the propositions that administrative agencies cannot exercise legislative authority and that creating a cause of action is necessarily a legislative act. *Id.* ("Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

*Sandoval's* actual holding, however, was not so broad. Instead, the question before the Court was whether a federal agency could create, through regulation, a private right of action *against a third party*. *Sandoval's* holding does not necessarily foreclose an agency from creating (or at least, by regulation, consenting to) a cause of action against itself. The notion that a federal agency can, through regulation, consent to suits against it may be consistent with the general principle that agencies should be given wide discretion in procedural matters that do not affect the

substantive rights of others. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978).

Perhaps more fundamentally, WMATA is an entity created through an interstate compact, not a federal administrative agency as in *Sandoval*. As discussed in the Court's Memorandum Opinion of May 21, 2020, ECF No. 13, WMATA is an "instrumentality and agency of each of the signatory parties"—D.C., Maryland, and Virginia. *Id.*; *see Schindler Elevator Corporation v. WMATA,* 16 F.4th 294, 302 (D.C. Cir. 2021); *WMATA v. One Parcel of Land*, 706 F.2d 1312, 1314 (4th Cir. 1983); *Seal & Co. v. WMATA*, 768 F. Supp. 1150, 1154 (E.D. Va. 1991). Because states do not uniformly adopt the separation of powers principles of the federal government, holdings regarding federal administrative law (including *Sandoval*) are not obviously applicable to state instrumentalities. Instead, it seems that the two relevant questions—whether Plaintiff *needs* a statutory cause of action to pursue its PARP claim against WMATA and whether WMATA can create such a cause of action—turn on the Compact and the law of the constituent states.

As for the second question, interstate compacts are essentially contracts between the states. *See, e.g.*, WMATA Compact § 4. Assuming a state cannot delegate to an entity created by compact more power than it can grant to its own agencies,[3] the constituent-state with the most restrictive nondelegation doctrine would control WMATA's power to create a cause of action. Virginia and Maryland each ostensibly have a nondelegation doctrine, but it appears that neither would prevent the delegation at issue here. Maryland's nondelegation doctrine seems to have been retired. *See*

---

[3] This appears to be an open question. To the extent interstate compacts are analogous to treaties, there is some reason to think that states could enter interstate compacts granting powers beyond what a state could grant its own agency. *See State of Missouri v. Holland*, 252 U.S. 416, 430–35 (1920) (suggesting the Federal government could enter treaties that regulate beyond the scope of the Federal government's authority to regulate); *but see Reid v. Covert*, 354 U.S. 1, 15 (1957) (holding that treaties may not violate the individual rights provisions of the constitution).

*State Insurance Commissioner v. National Bureau of Casualty Underwriters*, 248 Md. 292, 298–300 (1967) (noting the movement away from judicial enforcement of nondelegation principles). And while Virginia's doctrine prohibits delegations to non-governmental agencies, *see County of Fairfax v. Fleet Indus. Park Ltd. Partnership*, 410 S.E.2d 669 (Va. 1991), it does not limit delegations to administrative agencies, *see Elizabeth River Crossings OpCo, LLC v. Meeks*, 749 S.E.2d 176 (Va. 2013) ("In the exercise of its broad, plenary power, the General Assembly can generally delegate its legislative powers to Executive Branch administrative agencies[.]"). Thus, neither Maryland nor Virginia have a nondelegation doctrine that would prohibit an administrative agency from exercising general legislative powers, including presumably by creating a cause of action. *See id.*; *Christ by Christ v. Maryland Dept. of Natural Resources*, 644 A.2d 34 (Md. 1994) (noting "a long line of cases" upholding "broad general delegation[s]" and that "delegations of legislative power to executive branch agencies or officials ordinarily do not violate the constitutional separation of powers requirement").

The District of Columbia is a different matter. The D.C. Court of Appeals has not yet decided whether local administrative agencies can create causes of action or whether any limits on delegation apply. *See Unum Life Ins. Co. of Am. v. D.C.*, 238 A.3d 222, 232 (D.C. 2020) (noting the uncertainty and assuming, without deciding, that the Federal nondelegation doctrine applies to the District). As such, whether the Compact authorizes WMATA to create a cause of action seems to depend on an unresolved question of D.C. law.

Assuming that the constituent states could give WMATA the authority to create a cause of action, the text of the Compact appears to do so, at least with respect to disclosures of its own information. The Compact grants the Board power to "prepare, publish and distribute such [] public reports and informational materials as it may deem necessary or desirable." Compact § 71.

And the Compact grants WMATA broad authority to "[a]dopt, amend and repeal rules and regulations respecting the exercise of the powers conferred by [the Compact]," *id.* § 12(c), and to "[e]xercise, subject to the limitations and restrictions [imposed by the Compact], all powers reasonably necessary or essential to the declared objects and purposes of [the Compact]," *id.* § 12(m). WMATA exercised such authority to create PARP and, in 2005, adopted PARP provisions that purported to provide a cause of action for injunctive and declaratory relief. PARP §§ 9.3.1, 9.3.3. While there is no express delegation of the authority to create a cause of action, an ordinary reading of the text of those provisions would include that power as "reasonably necessary" to WMATA's ability to bind itself to a policy of public disclosure of its internal documents.

As to the first question, it is not at all clear that Plaintiff needs a *statutory* cause of action. After all, the common law writs of certiorari and mandamus may provide a cause of action for court review of administrative actions, provided no other mechanism for judicial review exists. *See* John F. Preis, *How the Federal Cause of Action Relates to Rights, Remedies and Jurisdiction*, 67 Florida L. Rev. 849, 864–78 (2016) (explaining that writs are causes of action); Stephen G. Breyer, et al., *Administrative Law & Regulatory Policy* 757–60 (8th ed. 2017). There is some reason to think the All Writs Act[4] does not empower federal courts to issue writs of certiorari, and, even if it does, it is not clear whether common law certiorari would apply to this case. *See In re Tennant*, 359 F.3d 523 (D.C. Cir. 2004) (explaining the All Writs Act empowers courts to issue writs only with regard to actions that are otherwise reviewable or prospectively would be reviewable); *Degge v. Hitchcock*, 229 U.S. 162, 171–72 (1913) (explaining that the common law

---

[4] 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

writ of certiorari "ran from court to court—including boards, officers, or tribunals . . . whose judgments would be conclusive unless set aside," but not "for the purpose of reviewing an administrative order"); *but see id.* at 171 (assuming such administrative orders could still be reviewed in "a court of equity"). As for mandamus, the Supreme Court has explained that:

> Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He cannot transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them.

*Work v. United States ex rel. Rives*, 267 U.S. 175, 177 (1925); *see also Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 465 (1974) (Brennan, J. concurring) (concurring to expressly leave open the question of whether mandamus provides a cause of action to review agency action if a statute otherwise does not). To the extent the PARP procedures are non-discretionary or defendants transgressed the limits of their discretion, a writ of mandamus might provide a cause of action.

But even if the All Writs Act is inapplicable, state common law writs may provide a cause of action. As the leading administrative law casebook states, "Certiorari is still extensively used in the state courts; each jurisdiction subjects its use to myriad statutory and judge-made limitations," and "the states provide mandamus as a method for review of administrative actions, but its use is the subject of 'baffling procedural technicalities. . . . Years of historical development, in each state, have accumulated intricate age-encrusted filigrees which vary from state to state.'" Breyer at 757, 759 (quoting 2 F. Cooper, *State Administrative Law* 653–54 (1965)). Assuming a federal court can exercise a state writ against an interstate compact (perhaps on a theory akin to applying the most-restrictive constituent state's nondelegation doctrine, *supra* at 10), *state* writs of certiorari and mandamus may both be available.

This issue takes much the same form as the state nondelegation issue. *Supra* at 10–11. Maryland courts grant both certiorari and mandamus writs to review, *inter alia*, final adjudicatory decisions by agencies when there is no statutory provision for review. *See Bd. of License Comm'rs for Anne Arundel Cty. v. Corridor Wine, Inc.*, 361 Md. 403, 411 (2000). In Virginia, the relevant version of certiorari is primarily used in a manner provided by statute, *see* VA Code § 15.1–497; *see e.g.*, *Prince William Bd. of Cty. Supervisors v. Archie*, 296 Va. 1, 8 (2018), though, at a minimum, mandamus still issues according to common law principles, *see* VA Code § 17.1-513; *Cartwright v. Commonwealth Transp. Com'r of Virginia*, 270 Va. 58, 63 (2005).

Again, the District of Columbia appears to be the hold-up. The D.C. Court of Appeals has the power to issue writs. *See Morrow v. D.C.*, 417 F.2d 728, 735 (D.C. Cir. 1969). But it is unclear whether D.C. courts may review administrative action through writs when there is no other statutory basis for review. It does not appear to be a common practice. But whether the courts have the power to do so appears to be an unresolved question of D.C. law.[5]

\*\*\*

---

[5] The Court is aware of no other sources that might grant Plaintiff a cause of action for the PARP claim. State APAs do not provide a cause of action for PARP, and there is good reason to think that, as a matter of state law, WMATA is not within the scope of the respective state APAs. *See, e.g.*, *KiSKA Const. Corp.-U.S.A. v. WMATA*, 167 F.3d 608, 612 (D.C. Cir. 1999) (stating that "as a matter of D.C. law, it is clear that WMATA is not an agency within the meaning of the DC-APA, and, accordingly, is not an agency within the meaning of the DC-FOIA."). Nor is it clear that a state could, unilaterally, subject an interstate compact to the state's own laws regarding administrative procedure.

At most, the constituent-states' APAs merely add to the general presumption that administrative action is reviewable. *See, e.g.*, *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977); *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 111 (1902). The Compact and associated regulations should be read in light of that background principle, but state APAs do not appear to provide a cause of action in this case.

On remand, Plaintiff argues there is no cause of action for Plaintiff's PARP claim.[6] Plaintiff appears to wish to withdraw its PARP claim entirely, recommending "the Court [] vacate its prior ruling and allow the parties the opportunity to re-brief the issues related to Plaintiff's *alternative* claims." *Id.* at 7 (emphasis added). This is particularly odd because, on appeal, Plaintiff challenged this Court's ruling only as to the merits of the PARP claim. Nonetheless, Plaintiff did not move to dismiss the PARP claim and, in any event, the Court declines to take the course suggested by Plaintiff. While the Plaintiff is the master of its complaint, judgment has been entered on the merits and the Court sees no ground to alter that judgment now (assuming it has jurisdiction to do so).

The Court also declines to vacate its prior ruling or allow the parties the opportunity to re-brief the issues related to Plaintiff's other claims. In the last sentence of its supplemental brief, Plaintiff suggests—for the first time—that Defendants were correct that PARP precluded the Plaintiff's other claims, and thus re-briefing would meaningfully change the relevant arguments. *Id.* at 7. The Court disagrees. As noted, there is no ground to amend the judgment to dismiss the PARP claim, and, in any event, dismissing the PARP claim would not change the Court's reasoning or judgment as to the other claims.

### III.   Conclusion

In short, it is not clear whether WMATA can create a cause of action, but it does not matter in this case. WMATA has affirmatively waived its objection to the lack of a cause of action in this litigation and through its regulations. To the extent it is appropriate to decide the issue, neither

---

[6] Plaintiff also asserts it is an "open question" whether WMATA's failure to raise an objection on the cause of action before summary judgment precludes WMATA from raising it on remand. *See* Plaintiff's Supplemental Brief at 4, ECF No. 20. But, as noted, WMATA does not raise the objection even on remand.

the Compact nor any other statute directly creates a cause of action for the Plaintiff, but there are several plausible alternative sources of a cause of action.

DATE: December 8, 2021

*[signature]*
CARL J. NICHOLS
United States District Judge